## PANHANDLE & S. F. RY. CO. v. LAIRD.
### (No. 1687.)

(Court of Civil Appeals of Texas. Amarillo. June 16, 1920. Rehearing Denied July 3, 1920.)

**1. Railroads ☞351(2)—Submission of issue of discovered peril held justified.**

In an action by a motorist struck at a crossing, the submission of issue of discovered peril *held* justified, the fireman testifying that he saw the automobile approaching the crossing.

**2. Release ☞55—The burden of proof is on the party asserting the invalidity of release.**

The burden of proof is on the party asserting the invalidity of release.

**3. Appeal and error ☞1062(1)—Submission of validity of release raised by supplemental petition not reversible.**

In an action for damages for destruction of an automobile and injuries received in collision, where the defendant railroad company requested submission of issue whether plaintiff was caused to sign a release by fraud, duress, or imposition practiced on him, etc., and the jury answered in the affirmative, the submission of the question whether the release was obtained as alleged in the supplemental petition was not reversible error, although the issue should not have been submitted in view of the complexity of the supplemental petition.

**4. Appeal and error ☞1062(2)—Refusal to submit issue harmless.**

Where the jury found that plaintiff was guilty of contributory negligence, the refusal of the court to submit that issue was harmless.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Trial ⬚351(5)—Special issue covered properly refused.**

The refusal of an issue whether the enginemen were unable to avoid striking plaintiff's car after they knew he was not going to stop was not error; the court having submitted the question whether the operators discovered and realized plaintiff's position of peril in time to avoid the accident.

**6. Evidence ⬚121(1)—Declarations admissible as res gestæ.**

To be admissible as res gestæ, declarations must either be a part or continuance of the transaction, or made under such circumstances as to raise a reasonable presumption that they are the spontaneous utterances of thoughts created by or arising out of the transaction itself, and, if they are not in their nature part of the transaction, they are inadmissible.

**7. Evidence ⬚123(10) — Declarations as to accident held not admissible as res gestæ.**

While the admission of declarations as res gestæ rests largely in the discretion of the trial court, the facts must be sufficient to justify the reasonable conclusion that the declarations were made under such circumstances that reason and reflection were not dominant; hence, in an action against a railroad company for destruction of a motorcar and injuries received by the motorist, whose vehicle was struck by a train, evidence of the declarations made by passengers and others after the train had stopped that the whistle was not sounded, coupled with details of a fight between one of the spectators and the engineer, who asserted he sounded the whistle, were inadmissible as part of the res gestæ, such declarations having regard to the railroad company's liability.

**8. Appeal and error ⬚1050(1)—Admission of declaration of bystander held prejudicial.**

In an action against railroad company, where the evidence as to whether the engineer sounded his whistle was conflicting, the erroneous admission of evidence of declarations by passengers, made after the accident, that whistle was not sounded, which were used to rebut the testimony of the engineer, was prejudicial.

**9. Trial ⬚412—Erroneous admission of evidence not waived by introducing similar evidence.**

In an action against railroad company arising out of crossing accident, where there was testimony that the whistle was not sounded, the fact that the railroad company brought out its version as to a fight between the engineer and another arising over dispute as to that question was not a waiver of the erroneous admission of such declarations, where the particulars of the fight were first brought out by plaintiff and defendant merely desired to prove its version.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by A. F. Laird against the Panhandle & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Reversed.

⬚For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellant.

Barrett & Childers and Reeder & Reeder, all of Amarillo, for appellee.

HUFF, C. J. This action was brought by Laird against the railway company for damages for personal injuries and for injury to an automobile, by coming into collision with appellant's train at a crossing on the public highway. The jury found the appellee was guilty of contributory negligence, thereby eliminating all issues except the issue of discovered peril, upon which the judgment herein is based. It is alleged in effect in appellee's petition that just before the plaintiff's injury appellant's servants discovered him coming towards the crossing, and discovered that he and his automobile were in peril at the time, and that he was going into peril, and by the use of the means at hand the employés could have avoided the collision. The jury found appellant, its agents and servants, discovered appellee, and realized he was going into danger and was in peril in time, in the exercise of ordinary care, to have avoided the collision and injury. The appellee was traveling in his automobile out of Plainview, going north, along the highway, which parallels appellant's railway, several miles. At the point of collision, about six miles out from Plainview, the railroad makes a curve towards the west, crossing a highway. The dirt road continues north, making, just before crossing the railway, a turn east, so, as we gather, to cross the track at about a right angle. The evidence warrants the finding that appellee's car reached the first or west rail of the railroad when the engine struck the car, knocking it some 90 feet from the crossing and about 30 feet west of the railway track. The car was practically demolished, or rendered useless as a car. The appellee's leg was broken above the ankle, and one or two ribs broken, and he was otherwise bruised, cut, and skinned. The appellee was traveling in a closed car. The mica, or isinglass (or celluloid), in the curtains on the rear and on the side next to the railway track was broken out, and these places were closed by oil cloth, so that he could not see out without in some way opening the curtains. He did not stop or look for the train, but only looked through the wind shield in front of him; he did not see or hear the train. He testified that the whistle was not sounded for the crossing at the whistling post, or the bell rung, until the crossing was reached or passed. Some other witnesses corroborate him in this particular, but generally qualified their statement by saying they did not hear the whistle or bell. The evidence will support the finding of the jury that appellant was negligent in this respect, and that appellee was also guilty of

negligence which contributed to his injury, and which was a proximate cause thereof. The appellee testified substantially that he started to reduce his speed, which according to his testimony had been 15 or 20 miles per hour as he approached the crossing; that it was reduced by the grade itself and by himself; that he certainly reduced it some himself. He shut off the gasoline some, and the car would naturally slow up, going up grade, though he did not remember exactly just what he did; that he might have thrown his clutch out a little; he thought he was about 50 feet from the crossing when he did the things above mentioned; that he could stop his car in 10 feet when traveling 10 or 12 miles an hour. It was his judgment that he was traveling about that speed when struck. The engineer did not see the appellee until after the accident. The train was traveling at 35 to 40 miles per hour as it made the crossing. About the time the engine reached the crossing or at the cattle guards, the fireman hollered to the engineer to look out, or that, "We have killed a man!" The air was not applied until they were on the crossing. The speed was not slackened until after the collision. The fireman, in effect, testified that he saw the appellee and his automobile for 2 miles before reaching the crossing; that the train was traveling about 40 miles per hour, and, judging from the speed of the train, that the appellee was traveling about 25 miles per hour; that the back of the car was to him until they reached the crossing; that if the car slackened the 25 miles speed before going up to the crossing, he could not tell it. "When I realized he was going on the crossing, then is when I told the engineer. We were too close then even to think about getting stopped." Again he testified:

"We was bound to meet right at the crossing, I figured about the crossing, and we blowed the whistle and rung the bell. I made no further effort to prevent a collision until I seen he was going up on the track."

This witness further testified it was not suggested to him that the man did not know the train was coming; that he did not think it impossible for appellee to stop for the crossing when he was approaching it 25 miles per hour. His testimony is also to the effect that automobiles frequently run up to crossings, and stop until the train passes, and that the train did not slacken or stop at the crossing or in going over the crossing. The engineer's testimony would indicate the whistle was sounded only at the whistling post, 80 rods from the crossing, and other testimony would seem to indicate that the whistle was not sounded except at or about the post.

The first assignment is to the effect that the uncontradicted evidence shows that appellee was himself guilty of negligence in failing to stop, look, or listen, and that the judgment is therefore erroneous. The jury found the appellee was guilty of negligence, and this assignment, by such finding, is eliminated.

[1] The second and third assignments assail the verdict of the jury in finding there was discovered peril, and complain of the charge of the court in submitting that issue to the jury, because there was no evidence supporting discovered peril. We are not prepared to say there is no evidence supporting the verdict or justifying the submission of that issue by the court. The fireman's testimony, as above set out, possibly presents the issue. This case is probably controlled by the holdings in the following cases: Trochta v. Railway Company, 218 S. W. 1038; Railway Company v. Finn, 107 S. W. 94; s. c. (by Sup. Ct.) 101 Tex. 511, 109 S. W. 918; Railway Company v. Reynolds, 103 Tex. 31, 122 S. W. 531.

[2, 3] The fourth, fifth, and sixteenth assignments complain of the manner in which the court submitted the issue as to the validity of a settlement contract and the execution of the release of his claim for damages, and the last assignment is to the effect that the evidence is not sufficient to support the findings of the jury, which in effect set aside the settlement. It is first urged that the issue as submitted placed the burden on the appellant to show that appellee's mind was in a normal condition, or such condition as to be capable of transacting business of a compromise. We do not think the criticism of the court's charge justified. The burden is placed upon the party holding the affirmative of any issue. The form of the issue itself did not put the burden on any one. The jury must have understood the burden was on the appellee. Gulf, Colorado & Pacific Railway Company v. Trout, 225 S. W. ——,[1] this day handed down. It is also asserted that the seventh issue required the jury to find whether the release was secured by the claim agent and the physician as alleged in appellee's supplemental petition, which it is asserted was an improper submission of the issue. We are inclined to believe when the pleadings are as long and involved as in the supplemental petition, and where several grounds are set up as in the pleadings, the court should not so submit the issue. However, at the request of appellant, the trial court asked the jury if appellee was caused to sign the release by reason of fraud, duress, or imposition, practiced upon him by the claim agents or the doctor. This issue the jury answered in the affirmative. There was therefore no reversible error in asking the jury if appellee was induced to sign, as alleged in the supplemental petition. We do not believe it necessary to set out the evidence on this branch of the case, but believe it sufficient to sustain the

[1] Rehearing pending.

jury's finding under the numerous decisions of our courts.

[4] The seventh assignment is overruled. The jury having found the appellee guilty of negligence rendered it unnecessary to submit the issues, the refusal of which is here urged as error.

[5] The eighth assignment is based on a refusal to give an issue requested, to the effect whether the enginemen were unable, by use of all means at their command, to avoid striking appellee's car after they knew that he was not going to stop, or after they should have known that he was not going to stop. The court in an issue, asked the jury if the operators discovered and realized appellee was going into danger and was in peril in time, in the exercise of ordinary care, to have avoided the collision and injury. The controlling agencies who are operating trains and who place a person in peril are required to use the care which an ordinarily prudent person would use, and the jury are the judges as to what measures of diligence are necessary to constitute that care under given circumstances. Railway Co, v. Hodges, 102 Tex. 524, 120 S. W. 848, and authorities cited under the second and third assignments.

[6-8] The sixth, thirteenth, fourteenth, and fifteenth assignments will be considered together. The sixth complains at the refusal of the court to charge the jury not to consider the testimony of D. A. Brooks as to what he heard passengers say about the whistle being blown. The appellant also objected to the testimony of this witness when it was offered, because it was hearsay. He testified after the collision, and after the train backed up, that he heard one or two passengers say they did not hear the engine whistle for the crossing. The other assignments are to the testimony of several witnesses, to the effect that after the train backed up and passengers alighted and had gone to appellee, and while he was being moved into the train for the purpose of carrying him to the sanitarium, D. A. Brooks said the engineer did not blow the whistle, and the engineer said he did, and Brooks hit the engineer in the mouth. Brooks further said if any one wanted to take it up he was open for all engagements. Some of the witnesses state the engineer said any one who said he did not blow the whistle was a liar. The various witnesses give just a little different version of the occurrence, but all concur that the fight came up over a dispute as to whether the whistle was sounded or not. The following witnesses were permitted to detail this occurrence, over the objection of the appellant, to the effect that it was hearsay, prejudicial to its rights, and not binding on it: Carsteen, Vance, O. E. Brooks, D. A. Brooks, Smith, Truskitt, Hilton, and Frost. Proper bills of exception were taken to the testimony of each of these witnesses. If the evidence is admissible, it was so because it was a part of the res gestæ. We think one of the rules for determining whether evidence is part of the res gestæ is to ascertain if the declarations, when made, were a part or a continuation of the transaction sought to be established, or whether it had terminated, and, as held by our courts, such as are made under circumstances as will raise reasonable presumption that they are the spontaneous utterances of thoughts created by or springing out of the transaction itself. "If declarations are not in their nature a part of the fact, they are not admissible in evidence, however closely related in point of time. The expression of mere thought or feeling engendered by a certain occurrence or fact does not form a sufficiently substantial connecting link between the fact and the subsequent statement of an eyewitness about it to make that statement admissible in evidence as part of the res gestæ." R. C. L. vol. 10, "Evidence," § 160; p. 977; Railway Co. v. Moore, 69 Tex. 157, 6 S. W. at page 633; Austin v. Ritz, 72 Tex. 391, 9 S. W. 884; Railway Company v. Ivey, 71 Tex. 409, 9 S. W. at page 350, 1 L. R. A. 500, 10 Am. St. Rep. 758; Railway Company v. Marshall, 57 Tex. Civ. App. 538, 122 S. W. 946; Roth v. Travelers' Protective Ass'n, 102 Tex. 241, 115 S. W. 31, 132 Am. St. Rep. 871, 20 Ann. Cas. 97. It is perhaps true that our courts have extended the rule as far as any other, and as pointed out by Judge Hall, in Dallas Hotel Company v. Fox, 196 S. W. 647, are not in harmony, and, even though the evidence may be in its nature a recital, will not necessarily exclude it. Yet it must be such as to exclude the idea or premeditation. It must be a spontaneous utterance of thought, springing out of the transaction itself. The Court of Criminal Appeals, in Bradberry v. State, 22 Tex. App. 273, 2 S. W. 592, quotes from Wharton's Criminal Evidence, §§ 262-263 (8th Ed.), and also from section 691:

"The test is, Were the declarations the facts talking through the party, or the party talking about the facts? Instinctiveness is the requisite, and when this is obtained the declarations are admissible."

We do not think the declaration of one or two passengers who stated the whistle was not blown, as testified to by Brooks, admissible. The evidence does not seem to us to be spontaneous or instinctive. The circumstances show there was a difference of opinion as to the blowing of the whistle by the parties present. These parties were evidently considering the liability or nonliability of the railroad, and were debating the question of negligence, whether in words, at least mentally. The statement has the earmarks of premeditation. Clearly, we think the dispute between Brooks and the engineer and the

fight which resulted was not admissible. It is true our courts, with some others, hold the admission of such evidence is in the discretion of the trial court. The facts, however, must be sufficient to justify the reasonable conclusion that the declarations were made under such circumstances that reason and reflection were not dominant, but that they were made from impulse. Railway Company v. Huckabee, 207 S. W. 329. This testimony objected to evidently turned the scales in favor of the appellee. The appellant produced several witnesses, who testified positively that the whistle was sounded. Some of them were not connected with the railroad. One, a gentleman from Iowa, who was looking at the country at the time, says when he heard the whistle he thought they were approaching the station, and looked out to see it, and when the train slowed up he saw the wreck. A farmer, driving his team on the dirt road, testifies that appellee passed him in his car near the whistling post, and was running with the train, and that the whistle was sounded, and frightened his team, and after he got them quieted he saw the train stop, and saw the car of appellee as it lay by the way. Others swear positively the whistle was blown. Brooks and appellee swear positively it was not; others that they did not hear it. Brooks put this issue to the test by wager of battle, and in that trial it appears established the truth of his assertion. William the Conqueror may have brought the trial by wager of battle to England, but we are not informed that any one ever brought it to America. This evidence should not have been received or permitted to go to the jury, and ought not have influenced the discretion of the court in favor of its admission. It is true appellee's negligence defeated a recovery of the negligent failure to whistle 80 rods from the crossing, and that he could recover only by showing the operators discovered his peril after that time, and in time by the exercise of ordinary care to have prevented the collision; that after this there was a new duty on the part of appellant which arose and required appellant to do all that reasonable care demanded to prevent the injury. The jury might have found appellant was again required to sound the whistle if they had found that he sounded it at the whistling post. It is manifest we think from this record that the testimony objected to was used to induce the jury to believe the failure to sound the whistle was negligence after the operators realized appellee was going into danger or was in a perilous situation. It is probable that they considered him in peril from 80 rods of the crossing and in view of the fireman until the collision. At least we cannot say under this record the admission of this evidence was harmless, or that it did not probably induce the finding of the jury on discovered peril.

[9] The appellee also insists that appellant waived the objection by permitting other evidence of like kind, without urging an objection to it. The evidence claimed as having that effect is not quoted in the brief, but, referring to the pages noted in the brief, we find one or two places where witnesses referred to a fight without giving the occasion of the fight or what brought it up. The fireman, Frost, was asked about this fight by the appellee upon cross-examination, and his evidence was brought out in that examination. Upon redirect examination by appellant, the witness was further questioned on that testimony for the apparent purpose of getting appellant's version of the fight. The engineer was also required to testify to the fight, and to give its occasion, over the objection of appellant. He was also re-examined by appellant on the occurrence, apparently to obtain more fully the version of appellant. We do not think in any of the above instances the appellant waived its objection to the testimony heretofore discussed. Dallas Hotel Company v. Fox, 196 S. W. 654; Cathey v. Railway Company, 104 Tex. 39, 133 S. W. 417, 33 L. R. A. (N. S.) 103.

It is unnecessary to notice particularly the other assignments. They will be overruled.

The judgment will be reversed for the reasons above set out.

---

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes