**TEXAS EMPLOYERS' INS. ASS'N v. DAVIDSON et al.  (No. 11608.)**

(Court of Civil Appeals of Texas. Fort Worth. June 19, 1926. Rehearing Denied Oct. 16, 1926.)

**1. Master and servant ⬅405(4)—Evidence held to show circumstantially that, by lifting, injury was suffered in course of employment (Employer's Liability Act, as amended by Acts 35th Leg. [1917] c. 103, pt. 4, § 1, subd. 5).**

Evidence *held* to show circumstantially that, by lifting line of pipe, some disarrangement of some of organs or some lesion occurred, which was an injury to structure of body within course of employment, for which employee could recover, under Employer's Liability Act, as amended by Acts 35th Leg. (1917) c. 103, pt. 4, § 1, subd. 5.

**2. Evidence ⬅127(4)—Ordinarily, involuntary expressions of pain are admissible, as res gestæ, to show existence of pain.**

Ordinarily, expressions of pain are admissible to show existence of pain, whether expressions are merely exclamations, groans, or verbal statements, on theory that they are involuntary expressions of suffering endured, and are admissible on theory of res gestæ.

**3. Evidence ⬅123(10)—Recitals as to cause of injury or how received are not admissible, when sought to be shown by person other than injured party.**

Recital as to cause of an injury or the occurrence in which it was received are not admissible, when sought to be shown by person other than injured party himself.

**4. Appeal and error ⬅901—Burden, on appeal, is on party claiming error in admission or exclusion of testimony to show it.**

When, in appellate court, error is assigned to admission of testimony, burden is on one objecting to admission to show that testimony was inadmissible; but, when assignment is urged to exclusion of testimony, burden is on one seeking to introduce testimony to show that it was admissible.

**5. Evidence ⬅127(3)—Statement of injured employee, complaining of pains several months after accident, held not admissible, as res gestæ.**

Statement of employee, injured during employment, to one who had not seen him until several months after accident, that his side hurt, and that he was overdone *held* not admissible, as res gestæ, to show that pain existed, since it was not an involuntary expression of present pain and suffering.

**6. Evidence ⬅127(4)—Statement of injured employee to witness that he thought something was pulled loose in his side held not admissible, as res gestæ, to show that pain existed.**

Statement of employee injured during course of employment in lifting to witness that he thought there was something pulled loose in his side *held* not admissible, as res gestæ, to show that pain existed.

On Motion for Rehearing.

**7. Evidence ⬅127(4)—Statement of injured employee to barber, when laying chair back, to be careful not to hurt side, held not admissible, as res gestæ, to show that pain existed.**

Statement of employee, injured by lifting during course of employment, to barber, when he was laying chair back, to be careful or it would hurt his side, *held* not admissible, as res gestæ, to show that pain existed, since it was not an involuntary expression on part of employee.

**8. Evidence ⬅317(3) — Hearsay evidence of pain held not admissible, where defendant was not seeking to impeach witness.**

Where defendant was not attempting to impeach employee, in suit for injuries received while lifting in course of employment, statement of employee to barber, when laying chair back to be careful or it would hurt his side, was not admissible to show that pain existed, since it was hearsay.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by T. L. Davidson and others against the Texas Employers' Insurance Association, to set aside an award of the Industrial Accident Board, and recover compensation under provisions of the Workmen's Compensation Act. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Lawther, Pope, Leachman & Lawther, of Dallas, for appellant.

Engleking & Dotson, of Electra, for appellees.

BUCK, J. This was a suit by appellee T. L. Davidson in the district court of Wichita county, to set aside an award of the Industrial Accident Board and recover compensation under the provisions of the Workmen's Compensation Act. Appellee claimed to have been injured in the employment of the American Refining Company and while helping to carry some joints of pipe. In his petition he alleged that his muscles and tendons in his side, back, and body were strained, and that a tendon or muscle in his side was broken; that his side, back, and lungs were greatly injured by reason of lifting said joint of pipe; that a tumor was caused to form on plaintiff's side, as a reason of which his health was broken and he was rendered unable to work; that he suffered pain in his sides and body and in his lungs, etc. Appellant answered by a general demurrer and certain special exceptions and a general denial. The cause was submitted to a jury upon special issues, and such issues and the answers thereto are as follows:

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Special issue No. 1: Did the plaintiff T. L. Davidson sustain personal injury on the 13th day of April, 1924? Answer: Yes.

"Special issue No. 2: If you answer the foregoing issue 'yes,' then answer the following: Were the injuries sustained by said Davidson in the course of his employment? Answer: Yes.

"Special issue No. 3: If you have answered each of the foregoing issues 'yes,' then did such injury result in the permanent total incapacity of said T. L. Davidson? Answer: Yes."

The following special issues were given at the request of the defendant:

"(a) Is the physical condition of the plaintiff as same now exists, the result of a previous condition existing in the physical condition of plaintiff, prior to the time that he was injured, if he was injured? Answer: No.

"(b) What was the average weekly [wages] of the defendant [plaintiff] for the year next proceeding [preceding] his injury. Answer as you find the facts to be, and, in this connection, you are instructed that the average weekly wage that you find above means that if the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wage consist of 300 times the average daily wage or salary which he shall have earned in such employment during the days when so employed; second, if the injured employee shall not have worked in such employment during substantially the whole year, his average annual wages shall consist of 300 times the average daily wages or salary which an employee of the same class, working substantially the whole of such immediately preceding year in the same or a similar employment in the same or a neighboring place, shall have earned in such employment during the dates when so employed. Answer: $31.50."

At the special request of the plaintiff, the court instructed the jury as follows:

"You are charged that in case you are unable to ascertain the average daily wage which was earned by an employee of the same class as the said T. L. Davidson working substantially the whole of the immediately preceding year to the 13th day of April, 1925, [4] you may compute the average daily wage of the said T. L. Davidson in any manner that may seem just and fair. What sum of money do you designate as the average daily wage of the plaintiff which to you may seem just and fair to both plaintiff and defendant? Answer, stating the amount. Answer: $4.50."

Upon the request of plaintiff, the court further submitted the following special issue, with instructions:

"You are charged that in case you are unable to ascertain the average daily wage which was earned by an employee of the same class as the said T. L. Davidson working substantially the whole of the immediately preceding year to the 13th day of April, 1925, [4] you may compute the average daily wage of the said T. L. Davidson in any manner that may seem just and fair. What sum of money do you designate as the average daily wage of the plaintiff which to you may seem just and fair to both plaintiff and defendant? Answer, stating the amount. Answer: $4.50."

Upon the request of the defendant, the following special issue was submitted:

"Did the plaintiff T. L. Davidson suffer partial incapacity by injuries received, if any, on April 13, 1924, while in the employ of the American Refining Company. Answer: No; plaintiff was totally disabled."

Upon the answers of the jury, the court rendered judgment for plaintiff for $15.57 a week for a term of 401 weeks, making a total compensation for his injuries of the sum of $6,243.57, less a credit of $31.50, which was paid by the defendant to the plaintiff, leaving yet unpaid the sum of $6,212.07. It further appearing to the court that 63 of said weekly installments of compensation had matured at the time of the trial, judgment for said amount, or $980.91, less $31.50 already paid, leaving $949.41 then due, was rendered for plaintiff against defendant. Judgment for 338 weekly installments of $15.57 was awarded plaintiff against defendant. One-third of the amount awarded plaintiff was ordered to be paid to his attorneys. From this judgment the defendant has appealed.

## Opinion.

[1] Under its first assignment, the appellant urges that, to be compensable under the Workmen's Compensation Act, the injury to the employee must be a damage or harm to the physical structure of the body and such disease or infection as naturally results therefrom. He urges that the evidence does not show that any injury to the structure of the body was suffered by appellee in the course of his employment, and that, therefore, any judgment against the appellant was not authorized. The Employer's Liability Act, as amended by the 35th Legislature (1917) c. 103, pt. 4, § 1, subd. 5, says:

"The words 'injury' or 'personal injury,' as used in this act, shall be construed to mean damage or harm to the physical structure of the body and such disease or infection as naturally results therefrom."

The evidence tends to show in this case that, while appellant was at work helping to lift and carry a line of pipe from one place to another, he experienced severe pains on each side and in his chest; that the pains were very severe, and he was forced to lie down and rest that afternoon; that these pains have continued since said time until the day of the trial, at least when he was standing up or attempting to do any work; that, when he was lying down, or in the morning when he got up, he often felt all right, but, when he attempted to work or to exert himself in any way, the pains returned. We think that this testimony is sufficient to

show circumstantially that, by the lifting, some disarrangement of some of the organs or some lesion occurred, which caused the pain suffered. The pains are only the evidence of the cause producing them.

There are several assignments of error directed to the admission of certain testimony of witnesses to whom it is claimed the appellee made statements concerning pain suffered by him after the injury. This evidence objected to, and the witnesses who testified, the questions asked the witnesses, and the answers thereto, are hereinafter stated:

Mrs. Rosa Pryor, at whose house appellee roomed at the time of the injury, was asked: "Did you ever hear him complain of pains in his body or chest or anything like that?" The witness answered: "He said his side pained him and complained lots of times with his side." E. D. Pryor, the brother-in-law of the last witness, was asked: "State whether or not at that time he complained of having pains in his side, or chest or anything like that." The witness answered: "I don't remember what he said, only he complained his side was hurting." Witness C. H. Mowery was asked: "What has he said with reference to being unable to work?" He answered: "He complained with his side hurting around this way and of being overdone." Witness D. Armstrong was asked: "State whether or not you have heard him make any complaint of physical pain, or his health, or anything of that kind since April, 1924." Witness answered: "Well, last fall, when he came up there to my place, he was complaining of his side." W. A. Beck, who was a barber, was asked: "Just tell the jury whether or not he ever complained of pain, bodily pain, or anything like that the times he has been in your place since April 13, 1924." He answered: "Yes." Question: "What did he say with reference to it? Just tell the jury all about it." The witness answered: "When I would go to lay the chair back he would often tell me to be careful. It would hurt his side or something like that." I. James was asked: "Tell the jury whether or not he complained of any pains in his side or anything like that." Answer: "Yes, sir; he did." Question: "What did he say with reference to it?" Answer: "He just said he thought there was something pulled loose in his side." Question: "State whether he made any complaints with reference to his health or pains during all that time." Answer: "Yes, sir; he did."

[2] Ordinarily, expressions of pain are admissible to show the existence of said pain, whether such expressions are merely explanations, groans, or verbal statements, upon the theory that they are but involuntary expressions of the suffering endured, and are admissible upon the theory of "res gestæ."

In Texas & P. Ry. Co. v. Barron, 78 Tex. 421, 14 S. W. 698, the Supreme Court, speaking through Chief Justice Stayton, said:

"Appellee claims to have been injured, while a passenger, in a wreck on appellant's railway, alleged to have been caused by its negligence. The evidence was conflicting upon the question whether appellee was injured in the wreck, and it is claimed that a new trial should have been granted on the ground that there was no sufficient evidence that appellee was injured at all in the wreck; but there was ample evidence on this point to sustain the verdict. A witness was permitted to testify: 'I was a passenger on the Texas & Pacific Railway train which was wrecked east of Elmo June 30, 1889, and was in the ladies' car. After the wreck we got the passengers out of the cars, some ladies among the number. After we had gotten all the passengers out of the cars, I saw the plaintiff, who seemed to be very much excited. He was very pale. I asked him if he was hurt, and he said: "I do not know." He placed his hands on his stomach or bowels, and said: "I feel very strange; I do not feel right in here; I am afraid I am hurt." How long it was after the wreck when this occurred, I do not know. We had gotten all the lady passengers out. It was perhaps 15 minutes. I cannot tell exactly the time that had elapsed since the wreck, but it was about 10, 15, or 20 minutes.' It is urged that this evidence should have been excluded. Other evidence tended to show that the conversation occurred soon after appellee succeeded in extricating himself from the wrecked train, and that the injuries afterwards found to exist were such as would not likely be realized at once after the act that caused them. The evidence was material, and especially so in view of the fact that it was contended on part of the appellant, with some evidence looking in that direction, that the claim of injury caused by the wreck was an afterthought, if not based entirely on feigned symptoms. 'Whenever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are also original evidence. If they were the natural language of the affection, whether of body or mind, they furnish satisfactory evidence, and often the only proof of its existence. And whether they were real or feigned is for the jury to determine. * * * So also the representations by a sick person, of the nature, symptoms, and effects of the malady under which he is laboring at the time, are received as original evidence. If made to a medical attendant, they are of greater weight as evidence, but, if made to any other person, they are not on that account rejected.' 1 Greenl. Ev. § 102. This rule is well established. Bacon v. Charlton, 7 Cush. [Mass.] 586; [Houston & T. C.] R. Co. v. Shafer, 54 Tex. 648. We think the evidence was properly admitted, and that the time that may have elapsed between the injury and the declaration is not of much importance in an inquiry of this character. The question was, What was his feeling at the time of speaking? Whether that was some time after the accident or not might affect the weight to be given to the evidence, as tending to establish that he was injured in the wreck, but would not affect its admissibility."

It will be noted that the expressions of the plaintiff in the above-cited case were made within a very short time, perhaps 15 minutes, after the accident, though the opinion states that the time elapsing between the injury and the statement of pain supposed to have been caused thereby is immaterial. See Houston & T. C. R. Co. v. Fox, 106 Tex. 317, 166 S. W. 693; Haring et al. v. Shelton et

al., 103 Tex. 10, 122 S. W, 13: Roth v. Travelers' Protective Association, 102 Tex. 241, 115 S. W. 31, 132 Am. St. Rep. 871, 20 Ann. Cas. 97; Trinity & B. V. R. Co. v. Carpenter (Tex. Civ. App.) 132 S. W. 837, and cases there cited; Panhandle & S. F. R. Co. v. Laird (Tex. Civ. App.) 224 S. W. 305, in which last case the following is said, quoting from the headnote:

"To be admissible as res gestæ, declarations must either be a part or continuance of the transaction, or made under such circumstances as to raise a reasonable presumption that they are the spontaneous utterances of thoughts created by or arising out of the transaction itself, and, if they are not in their nature part of the transaction, they are inadmissible.

"While the admission of declarations as res gestæ rests largely in the discretion of the trial court, the facts must be sufficient to justify the reasonable conclusion that the declarations were made under such circumstances that reason and reflection were not dominant; hence, in an action against a railroad company for destruction of a motorcar and injuries received by the motorist, whose vehicle was struck by a train, evidence of the declarations made by passengers and others after the train had stopped that the whistle was not sounded, coupled with details of a fight between one of the spectators and the engineer, who asserted he sounded the whistle, were inadmissible as part of the res gestæ; such declarations having regard to the railroad company's liability."

[3] It has been held in some cases, viz. I. & G. N. Ry. Co. v. Kuehn, 2 Tex. Civ. App. 210, 21 S. W. 58, by the Court of Civil Appeals, that testimony as to complaints made by injured parties are not admissible after suit is contemplated or filed, citing 1 Greenleaf on Evidence, § 102, and 1 Wharton on Evidence, § 268. Apparently contra to this statement is Jackson v. M., K. & T. Ry. Co., 23 Tex. Civ. App. 319, 55 S. W. 376, by the Dallas Court of Civil Appeals. It does not appear that the Supreme Court of this state has determined whether the admissibility of such evidence depends on the contemplation or filing of a suit or not, as neither of these cases appears to have gone to the Supreme Court. But, doubtless, it should be held that expressions of pain on the part of the injured party, to be held admissible, should be spontaneous expressions of pain existing at the time, and not mere recitals that the plaintiff was suffering pain. All of the authorities hold that a recital as to the cause of an injury, or the occurrence in which it was received, are not admissible when sought to be shown by a person other than the injured party himself. 7 Enc. of Evidence, Camp & Crowe (1905) p. 386 et seq., state the rule as follows:

"For the purpose of showing the nature and extent of the injury, and to aid in the assessment of damages therefor, evidence may be received of acts, statements, declarations, and the like, subsequent to the injuries, indicative of present pain and suffering. Thus evidence of screams and other similar exclamations has always been received, since they are the natural language of pain and suffering, of the existence of which, from the very nature of the case, there can be no other evidence."

On page 391, the author says:

"The admissibility of evidence of acts or declarations indicative of pain and suffering is not so much dependent upon the time when they were made as upon the circumstances under which they were made. Thus the competency of evidence of such acts or declarations is not affected by the fact that they occurred subsequent to the time when the injury was received."

On page 392, it is said:

"But the rule permitting evidence of acts or declarations indicative of pain or suffering by an injured person does not permit the reception of testimony of a physician as to such declarations, made to him when he was called for the express purpose of qualifying him as a witness in a prospective action, or in an action then pending. There is authority, however, to support the proposition that the fact that the injured person had in contemplation, or had instituted, such an action, does not affect the competency of such testimony, but may be considered by the jury in giving it weight."

In G., C. & S. F. Ry. Co. v. Ross, 11 Tex. Civ. App. 201, 32 S. W. 730, it was held error to permit an officer to testify to complaints made by the plaintiff when he was taking her deposition. The court said:

"The declarations as narrated by this witness do not come within this rule. In no sense can they be regarded as spontaneous or concomitant expressions of pain or suffering; and there is still less reason for holding the declarations to be part of the res gestæ, made, as they were, some eight months after the collision between plaintiff's wagon and the defendant's train, and made to the officer taking her deposition, to be read in a suit pending against defendant, and in the result of which the declarant is directly interested."

In M., K. & T. Ry. Co. v. Johnson, 95 Tex. 909, 67 S. W. 768, affirming a Texas Court of Appeals decision, in 67 S. W. 769, it was held that, while declarations of an injured person of the fact of his suffering pain, made to an expert on an occasion prepared by himself, for the sole purpose of furnishing the expert with the information on which to base an opinion favorable to plaintiff, the rule does not go so far as to exclude evidence of exclamations, shrinkings, and other expressions which appear to be a betrayal of pain, although made under the same circumstances.

[4] In none of the testimony objected to under this group of assignments is it shown that the declarations made by appellee were spontaneous expressions of pain. It may be reasonably argued by appellee that in the trial court it devolved on the defendant to show the inadmissibility of testimony offered by plaintiff, and if he failed to show,

by proper cross-examination, that the declarations of the plaintiff testified to by the witnesses were not made under circumstances to make them admissible, that the evidence having been admitted, we are not required in this court to presume that such circumstances did not exist that would make the declarations admissible as evidence. On the other hand, appellant, probably with equal plausibility, might argue that the burden was on the plaintiff below to show the admissibility of the testimony he offered. We understand the rule to be that when, in an appellate court, error is assigned to the admission of testimony, the burden is on the one objecting to the admission to show that the testimony was inadmissible; but, when an assignment is urged to the exclusion of certain testimony, the burden is on the one seeking to introduce the testimony to show that it was admissible. See M., K. & T. Ry. Co. v. Washburn (Tex. Civ. App.) 184 S. W. 582; Panhandle & S. F. Ry. Co. v. Cowan (Tex. Civ. App.) 243 S. W. 912.

[5, 6] Applying the general rules hereinabove discussed, it is our judgment that the testimony of C. H. Mowery, above set out, was subject to the objection made. It will be remembered that the question asked was:

"What has he said with reference to being unable to work?"

The answer was:

"He complained with his side hurting around this way, and of being overdone."

Mowery lived at Vernon, and had known the plaintiff below for some time prior to the accident. He did not see him subsequent to the accident until the 4th day of July, 1924. Plaintiff was attempting to pick cotton in the neighborhood of where Mowery lived, probably in the fields of W. W. Chenault, and was staying at Mowery's house at night. We do not know exactly what was meant by the witness in stating that the plaintiff claimed to be "overdone." But we suppose he meant that the witness claimed that he did not have any strength. Evidently this was not a spontaneous expression of present pain and suffering. Also we think there was error in the admission of the testimony of W. A. Beck. It will be remembered that Beck was a barber. That plaintiff sometimes came into his barber shop to be shaved. He testified:

"When I would go to lay the chair back, he would often tell me to be careful or it would hurt his side, or something like that."

We do not think this testimony was admissible under the rules hereinabove discussed. Nor do we think the testimony of I. James, to the effect that "he just said he thought there was something pulled loose in his side," was admissible.

For the reasons given, and, further, because of the failure of the record to disclose affirmatively that circumstances and conditions existed at the time of the utterance of the statements made by plaintiff below and testified to by the witnesses, as hereinabove shown, showing such statement to be admissible as res gestæ, we conclude that the judgment below should be reversed, and the cause remanded, and it is accordingly so ordered.

### On Motion for Rehearing.

Appellee calls our attention to two statements in our opinion which he thinks are contradictory. In the last paragraph of the opinion we said:

"For the reasons given, and, further, because of the failure of the record to disclose affirmatively that circumstances and conditions existed at the time of the utterance of the statements made by plaintiff below and testified to by by the witnesses, and hereinabove shown, showing such statements to be admissible as res gestæ, we conclude that the judgment below should be reversed, and the cause remanded," etc.

We believe the rule to be, as stated in the other statement:

"That when, in an appellate court, error is assigned to the admission of testimony, the burden is on the one objecting to the admission to show that the testimony was inadmissible; but, when an assignment is urged to the exclusion of certain testimony, the burden is on the one seeking to introduce the testimony to show that it was admissible." Missouri, K. & T. v. Washburn (Tex. Civ. App.) 184 S. W. 582; Panhandle & S. F. Ry. Co. v. Cowan (Tex. Civ. App.) 243 S. W. 912; F. W. & D. C. Ry. Co. v. Ryan, 271 S. W. 397, 400; Missouri Pac. R. Co. v. Sherwood, Thompson & Co., 84 Tex. 125, 136, 19 S. W. 455, 17 L. R. A. 643.

If any statement in the concluding paragraph of the original opinion can properly be construed as announcing a different rule than the one just stated, the writer wishes to withdraw such portion of our opinion.

[7] But we are of the opinion that at least some of the statements alleged to have been made by plaintiff below and testified to by the witnesses were not res gestæ, either of the transaction out of which the injury is claimed to have been received, or of any subsequent act of the plaintiff, in which he, by involuntary expressions of pain or suffering, indicated present pain or suffering. For instance, W. A. Beck testified:

"I run a barber shop and rooming house combined. He has been in my barber shop since that day. I have shaved him. He has complained of pain, bodily pain, since April 13, 1924. When I would go to lay the chair back, he would often tell me to be careful or it would hurt his side, or something like that."

At least. the majority are of the opinion that the last statement of the witness is not an involuntary expression of pain on the

part of plaintiff below, but is a statement by the plaintiff cautioning the witness to be careful, or his action in laying the chair back might or would hurt him. If such construction of the testimony is proper, and the majority believes it is, we do not think that the testimony of the witness is admissible as res gestæ, and that, if not, it would be hearsay.

Mr. Greenleaf says that hearsay is that kind of evidence which does not derive its value solely from the credibility to be given to the witness himself, but rests, also, in part upon the veracity and competency of some other person. Greenleaf on Evidence (13th Ed.) § 99. The following cases are cited by appellee in his motion: Ætna Life Ins. Co. v. Eastman, 95 Tex. 34, 64 S. W. 863; H. & T. C. Ry. Co. v. Fox et al., 106 Tex. 317, 166 S. W. 693; Gulf, C. & S. F. R. Co. v. Garren, 96 Tex. 605, 74 S. W. 897, 97 Am. St. Rep. 939; Bailey v. Look (Tex. Civ. App.) 174 S. W. 1010; Richard Cooke & Co. v. New Era Gravel & Development Co. (Tex. Civ. App.) 168 S. W. 988. In Ætna Life Ins. Co. v. Eastman, supra, in an opinion by Chief Justice Gaines, the court said:

"But two rules are reasonably well established: (1) That, in the absence of evidence impeaching the credibility of a witness, such testimony is never admissible. Moody v. Gardner, 42 Tex. 414. (2) That whenever a witness is sought to be impeached by showing that he has made declarations inconsistent with the testimony given by him upon the trial, and the tendency of such impeaching evidence is to show that the testimony of the witness is, by reason of some motive existing at the time of the trial, or of some influence then operating upon him, fabricated, it is proper to admit evidence of his former declarations which corroborate his testimony, provided such declarations were made at a time when no such motive or influence existed."

[8] In the cited case, the Supreme Court held that the evidence of former statements alleged to have been made by plaintiff were not admissible, and that the Court of Civil Appeals erred in so holding. In the instant case there was no effort made to show that plaintiff below had made any statements prior to the trial and subsequent to his alleged injury inconsistent with his testimony offered on the trial. It is true that the defendant offered the testimony of certain physicians to the effect that they were not able to find any evidence of injury. But this evidence was merely contradictory to the testimony offered by plaintiff and his witnesses, and by its introduction the defendant did not seek to impeach the plaintiff. In Houston & T. C. Ry. Co. v. Fox, supra, in an opinion by Chief Justice Brown, there was involved testimony offered by witnesses as to what the husband of the injured person had told the witnesses as to his wife's being hurt.

The Supreme Court held that in this case the evidence offered was improperly admitted. In the course of the trial, the defendant offered testimony which, if believed, would reasonably lead to the conclusion that Mrs. Fox had recently fabricated the testimony offered as to her injuries and the manner of receiving them. The court properly held that under such circumstances it would be proper to admit her statements made at a time near to the accident, and that she did speak of such accident, giving the time and place. We see nothing in this case that bears on the question here presented. In Gulf, C. & S. F. Ry. Co. v. Garren, supra, the same questions were involved as in the last-mentioned case, and consequently the decision has no bearing on the questions herein involved. The other cases cited are not pertinent to the issues herein involved.

.Motion for rehearing is overruled.