## TEXAS EMPLOYERS' INS. ASS'N v. HUNTER.

### No. 14604.

Court of Civil Appeals of Texas. Dallas.
Jan. 30, 1953.

Rehearing Denied March 13, 1953.

Burford, Ryburn, Hincks & Ford, Clarence A. Guittard and J. W. Matthews, Jr., all of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

CRAMER, Justice.

Joe Hunter on his appeal from the Board's award in a Workmen's Compensation case, in addition to jurisdictional and formal matters alleged he was totally and permanently disabled as a result of an accidental injury to his back on or about April 3, 1951 while in the course of his employment as a smelter man with Model Brass Company, and, as he bent over and was picking up a mold weighing 125 to 150 lbs., "something pulled loose in my back." He claimed total and permanent disability, and sought recovery in a lump sum.

Employer's insurance carrier, appellant Association, answered by general denial and plead affirmatively that Hunter's disability was due to a previous back condition which had existed for twelve or more years. On the trial on the merits the jury found the facts, in substance, as follows: That Hunter sustained personal injuries on or about April 3, 1951 as a result of an accident while working in the course of his employment as an employee of Model Brass Company which naturally resulted in total permanent incapacity to work, beginning on April 3, 1951; that such incapacity to work was not partial; was not solely caused by a previous accident or accidents; and that Hunter would have sustained solely from this injury 100% disability if he had not previous to said date sustained other accidental personal injury or injuries.

The evidence was highly conflicting and showed prior injuries to the back for which compensation had been paid by insurance carriers under the Workmen's Compensation Act; but there was also evidence that after the last injury prior to the present injury involved here, there was a fusion operation on his back which was successful and that he thereafter was able to do, and did do, manual labor as he had before the first previous accident.

It also appears from the record that such testimony was directly controverted and contradicted by other employees of his employer. The jury after considering all the evidence returned their verdict on special issues in substance as above set out. On the verdict, certain stipulations, and "other undisputed evidence," the trial court entered judgment setting aside the award of the Board and in favor of appellee Hunter for $8,507.45 plus interest, costs, etc. From the judgment the Association has duly perfected this appeal.

■ Appellee briefs first an objection to our consideration of appellant's point 1 attacking the jury's finding to the effect that Hunter sustained accidental personal injuries on April 3, 1951, asserting the finding is "so contrary to the overwhelming weight of all the evidence as to be clearly wrong and unjust"; because such point is "too general" under Texas Rules of Civil

Procedure, Rules 321, 322 and 374 to acquaint the trial court "with the specific question relied upon" by appellant; citing Bauguss v. Bauguss, 186 S.W.2d 384–387, by this Court.

While the Bauguss case is persuasive and the holding under the facts there was proper, we are of the opinion that the question before us is controlled by Barron v. James, 145 Tex. 283, 198 S.W.2d 256, by our Supreme Court; Lang v. Harwood, Tex.Civ. App., 145 S.W.2d 945; and City of Sweetwater v. McEntyre, Tex.Civ.App., 232 S.W. 2d 434. Here the motion for instructed verdict raised the question of no evidence to support the finding of an accident, and asserted that the evidence affirmatively showed no accident on the occasion in question. The objections to the charge asserted there was no evidence that appellee "sustained any injuries on the occasion in question"; and also that there was insufficient evidence to sustain the affirmative finding of injuries. Further that there was "no evidence that plaintiff sustained an accident on the occasion in question.'

Appellee counters' point 1 that the evidence "was sufficient to sustain the jury's finding to special issue No. 1 to the effect that plaintiff sustained accidental injuries about April 3, 1951." The record before us shows the trial court knew appellant's contentions under point 1, and, having overruled the same, held there was sufficient evidence to sustain the findings by the trial court as to injuries. Our review of the record convinces us that the findings of the jury were not so against the preponderance of the evidence as to make them manifestly wrong. The motion is therefore overruled.

■ Further considering point 1, appellee himself testified fully to the accident and the injury as well as his version of the result of the injury. While such evidence of accident and disability therefrom was directly denied by other witnesses who were working around appellee at the time of the claimed accident (and who also contradicted much of the other testimony of appellee), his evidence made a jury question. But appellant's point 1 goes further and raises the question that the finding is so contrary

to the overwhelming weight of the evidence as a whole as to be clearly wrong. This raises, in addition to the question of law, a question of fact exclusively within the final jurisdiction of this court. For that reason we have carefully read the record.

■ If we had been sitting on the jury we might not have reached the same conclusion as that reached by the jury, but we cannot go further and say the answer is clearly, and without question, manifestly wrong. It is material here that the trial judge who heard and submitted the case to the jury, overruled appellant's motion for a new trial, thereby holding that the evidence was sufficient for the jury and was such that he would not exercise his discretion to grant a new trial. We therefore overrule point 1.

■ Appellant's second point asserts error in the trial court's exclusion of a photostatic copy of an affidavit concerning a previous back injury similar to the one here claimed, which instrument plaintiff denied signing although it appeared to bear his signature and the record shows several admittedly genuine signatures which could be used for comparison purposes. Appellee counters this point with three counterpoints which assert, (1) the burden was upon appellant to show that the photostatic instrument offered in evidence was admissible, and not having done so, no error was shown; (2) that after the court stated to appellant's counsel (at the bench), "I don't understand you can prove it up at this time," and appellant's attorney answered, "I don't think I can," appellant was estopped to assert, without further showing, error in the exclusion of the instrument. The general rule is that where error is assigned to the exclusion of an instrument, the burden is on the one offering the instrument to show it was admissible. Texas Employers' Ins. Ass'n, v. Davidson, Tex.Civ.App., 288 S.W. 471–475, syl. 4; Panhandle & S. F. Ry. Co. v. Cowan, Tex.Civ.App., 243 S.W. 912. When appellant's attorney answered the court's question to the effect that he did not think he could prove the instrument up at that time, any error in its exclusion at that time was invited, and since there was no further

effort on the part of appellant to add to the record, no reversible error was shown. In addition to the above there was evidence of the same previous injury shown by an affidavit subsequently admitted in evidence before the jury. The error, if any, was invited and was also harmless. Point 2 is overruled.

Point 3 asserts "The court erred in not permitting plaintiff, over defendant's objection, to testify that he told Pat Sullivan (Mr. Patrick), his foreman, either some fifteen or twenty minutes or some one hour after the alleged accident, that he hurt his back." The statement from the record by appellant thereunder in full was as follows:

"Plaintiff testified during direct examination by his counsel, Mr. W. E. Johnson, that he stooped over to lift a mold and when he tried to lift it, something pulled loose in his back. Plaintiff further testified that he related the alleged occurrence to the shop foreman, Mr. Patrick, some fifteen or twenty minutes or some one hour after the accident allegedly happened. This testimony appears in the statement of facts as follows:

" 'Q. * * * After you hurt yourself out there that day, if you said anything to anybody connected with the Model Brass Company, who was that person? A. Pat Sullivan.

" 'Q. Pat Sullivan? A. Yes, sir.

" 'Q. What was his position with the Model Brass Company? A. He was shop foreman.

" 'Q. About how long after you had hurt yourself was it that you told Pat, if you told him? A. Fifteen or twenty minutes.

" 'Q. Tell the jury whether or not you were suffering at the time you told him. A. Yes, sir, I was hurting bad.

" 'Q. What was it you told him? A. I told him I hurt my back. He asked me how I hurt it.

" 'Q. A little louder. A. I told him I was lifting this iron flash mold and something pulled loose in my back.'

"Plaintiff changed his testimony as to the duration of time between the happening of the alleged accident and the alleged relation of it to Mr. Patrick, the shop foreman, to one hour upon examination by defendant's counsel, Mr. Logan Ford, and then changed his testimony back to fifteen or twenty minutes upon direct examination by his own counsel. The defendant objected to the testimony on the grounds that it was a self-serving, hearsay, statement. The objection was overruled."

■ Appellee counters the point that the evidence was admissible as a part of the res gestæ; citing Texas Employers' Ins. Ass'n v. Harbuck, Tex.Civ.App., 73 S.W.2d 113, 119, 120. The admission of the evidence, if error, in our opinion was harmless since the same statement was made in answer to one of appellant's attorney's questions. After appellant's attorney had elicited from him that the accident was around ten o'clock, he then asked:

"Around ten o'clock? What did you next do after you told him, you made that statement to him? A. He said, 'I saw you when you hurt your back' and told me I had better go report it to Pat.

"Q. What did you then do? A. I went and told Pat.

"Q. Pat is the foreman? A. That is the foreman.

"Q. Is that right? A. Yes, sir.

"Q. So, the second person you talked about it that morning was Mr. Patrick (his name was really Mr. Patrick)? A. I would not know for sure.

"Q. At least he is the foreman? A. Yes, sir.

"Q. At least you would recognize him if you would see him? A. Yes, sir.

"Q. About what time of the morning did you go to see Mr. Patrick? A. I would you say it was about fifteen or twenty minutes.

"Q. Would that be about 10:15 or 10:20? A. Something like that.

"Q. What does Mr. Patrick look like? A. He is kind of tall, slender like guy.

"Q. What did you tell him? A. I told him I hurt my back.

"Q. Did you tell him how? A. Yes, sir.

"Q. That is about ten or fifteen minutes after this alleged accident? A. Yes, sir.

"Q. What did he tell you? A. He told me to go over and take it easy.

"Q. What else, if anything, did he tell you? A. And he said Mr. Barr was not there, he could not send me to the doctor, Barr was out of town at that time."

■ The quoted evidence was similar to that complained of, and the conversation took place about the same length of time after the claimed accident. Under such circumstances the admission of like evidence as that objected to, made the admission of the evidence set out in the point, if it was error, harmless. We also sustain the counterpoint that it was part of the res gestæ. Point 3 is overruled.

Points 4 and 5 raise similar questions to those passed upon by us in Texas Emp. Ins. Ass'n v. Lee, Tex.Civ.App., 254 S.W.2d 902, under points there numbered 1, 2, and 3.

For the reasons stated in the Lee case, points 4 and 5 are overruled.

Finding no reversible error in appellant's points, the judgment below is

Affirmed.