JENNIE ROTH V. TRAVELERS' PROTECTIVE ASSOCIATION OF AMERICA.

No. 1886. Decided January 13, 1909.

**1.—Payment—Mailing Check.**

The mailing of a check for the amount of his dues by a member of a benefit society to its secretary was not a payment thereof until the check was received by the secretary. (P. 245.)

**2.—Contract—Construction.**

Language used in the constitution of a benefit society with regard to the conditions of its liability, if susceptible of two constructions, should be given the interpretation most favorable to the beneficiary, and other provisions of the instrument may be considered in determining the sense in which it is used. (P. 245.)

**3.—Delinquent Members—Death by Accident—Meaning of Killed.**

The constitution of a benefit society provided for payment of $5000 to the beneficiary named in the certificate of a deceased member "in case of death by accident." Another section, providing for forfeiture of membership and benefits by default in paying dues, and for subsequent reinstatement, declared that "if injured during the thirty or less days of his delinquency, the delinquent member shall receive no indemnity therefor, nor shall his beneficiaries receive anything should he be killed during such period of delinquency." A member who had met with an accidental injury while delinquent, later secured reinstatement, and afterwards, while in good standing, died as a result of such injury. Held that he was not "killed" at the time of receiving the injury, but at the time he died as a result of it, and not being killed during the period of his delinquency, the beneficiary, his wife, could recover under the terms of the constitution. (Pp. 245–247.)

**4.—Benefit—Insurance—Excepted Liability—Death—Disability.**

A provision in a certificate of benefit insurance exempting the society from liability "in case of injury, disability or death while intoxicated, etc., or disability when caused wholly or in part by any bodily or mental infirmity or disease" is not ambiguous. Only "disability" due to bodily or mental infirmity is excepted, and not death by accident to which such infirmity contributed. (P. 247.)

**5.—Evidence—Declarations of Injured Person.**

Declarations of a person injured by a fall on the ice while skating, made after his return, were admissible to show present suffering, but his statements

and those of his companions were not admissible to prove the fact of the fall and injury.   (Pp. 247, 248.)

**6.—Evidence—Leading Question.**

Evidence of witness by deposition held improperly admitted because given in answer to leading questions.   (P. 248.)

**7.—Evidence—Opinion.**

Testimony of various witnesses as to physical and mental condition of injured person held inadmissible because it was mere opinion of one not an expert and not stating the observed facts.   (Pp. 248, 249.)

**8.—Evidence—Irresponsive Answer.**

Evidence by deposition which should have been excluded because irresponsive to the interrogatory.   (P. 249.)

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Tarrant County.

Roth sued the Travelers' Protective Assn. and had judgment against it.   On defendant's appeal it was reversed and remanded, and appellee obtained writ of error on the ground that the rulings settled the case.

*Capps, Cantey, Hanger & Short* and *Theodore Mack,* for plaintiff in error.—The trial court, upon the issue raised by the pleading as to whether or not appellee's husband "was killed" while he was a member of the appellant's association in good standing, correctly charged the jury in the language of the contract.   This expressed language of the contract was of usual and ordinary understanding, not ambiguous, not in phraseology of a scientific or technical character, was not claimed to be ambiguous or uncertain, either by the pleading or the proof, and it was, therefore, proper and the duty of the court to follow this language of the contract in its charge and confine the issue to the same.   The charge in this particular being manifestly correct, it became the duty of appellant to ask special instructions upon any question of uncertainty in this language, either within itself or as applicable to some other phase of the case sought to be raised or presented by the defense, before the appellant could complain of the action of the court in this regard.   Red River, T. & S. Ry. v. Reynolds, 38 Texas Civ. App., 505; City of Dallas v. Jones, 93 Texas, 47; Railway v. Jarrard, 65 Texas, 566; Railway v. Corley, 89 Texas, 432.

It appeared from the evidence in this case that the blood clot, which was the result of the cerebral hemorrhage, alone caused the death of Wm. H. Roth.   The appellee produced clear and satisfactory evidence, that the same resulted from the accidental injury and fall.   Under the most favorable construction appellant's testimony only tended to show some pathological changes in the arteries of the deceased, which, under the testimony, most probably resulted from his advanced age.   There was no testimony that at the time of his injury and at the time of the accident or thereafterwards he was afflicted with any disease which caused or contributed to produce his death. The jury having found that his death was caused by the accident alone, and there being sufficient evidence to support the same, the

court properly overruled the appellant's motion for a new trial. United States Mut. Assn. v. Barry, 131 U. S., 100; Freeman v. Mercantile M. A. Assn., 17 L. R. A., 753; Modern Woodmen Accident Assn. v. Shryock, 39 L. R. A., 827; Atlantic Accident Assn. v. Alexander, 42 L. R. A., 189; Western Com. Trav. Assn. v. Smith, 40 L. R. A., 653.

All expressions of present physical pain or suffering, or declarations or exclamations made by a party at the time of a transaction or thereafterwards under such circumstances as will raise a reasonable presumption that they are spontaneous utterances springing out of the transaction, and under circumstances such as to exclude the presumption that they were the result of premeditation or design, are admissible in evidence. Railway v. Anderson, 82 Texas, 518; Arrington v. Texas & P. Ry., 70 S. W., 551; Wheeler v. Railway, 91 Texas, 356; Missouri, K. & T. Ry. v. Johnson, 67 S. W., 771; International & G. N. Ry. v. Smith, 14 S. W., 642; City of Galveston v. Barton, 62 Texas, 176; International & G. N. Ry. v. Kuehn, 2 Texas Civ. App., 210.

That the time which may have elapsed between the injury and the declaration is not of much importance. Railway v. Barron, 78 Texas, 424; Jackson v. Missouri, K. & T. Ry., 23 Texas Civ. App., 319; Railway v. Ayres, 83 Texas, 268; 3 Wigmore on Evidence, sec. 1747, et seq.

*Coke, Miller & Coke,* for defendant in error.—When the issue is whether a member of an insurance association was in good standing at the time an injury occurred, and not whether he was in good standing six weeks thereafter when death ensued, it is erroneous for the court to charge the jury to find for the defendant, if "at the time" deceased "was killed" he was in default in payment of his dues, and, by reason thereof, not a member of defendant association in good standing, without the court's giving some explanation as to the meaning of the phrase "at the time deceased was killed," because same is so ambiguous, confusing and misleading that the jury could not determine therefrom at what time said Roth must have been a member in good standing, and because same is more likely to be construed to mean at the time of death instead of at the time of injury to said Roth. Alexander v. Robertson, 86 Texas, 516.

Where an accident insurance association's contract provides that, if a member is delinquent in the payment of his dues, neither he nor his beneficiary shall be entitled to recover for any injury occurring to him during the time he is delinquent, and said member is delinquent in the payment of said dues and an injury occurs to him during such delinquency, from which he thereafter dies, his beneficiary can not recover on said contract of insurance. Carlson v. Supreme Council, 47 Pac., 373; National Acc. Asso. v. Burr, 62 N. W., 469.

Where the evidence is legally too remote for a jury to find for plaintiff, and such finding can only be made by the jury basing presumptions of fact upon presumptions of fact, the court upon request of defendant should charge the jury to find for defendant. Globe Acc. Ins. Co. v. Gerisch, 45 N. E., 563, 54 Am. St. Rep., 489; United

States F. & G. Co. v. Des Moines Natl. Bank, 145 Fed., 279; Cunard S. S. Co. v. Kelly, 126 Fed., 616; Association v. Shyrock, 73 Fed., 775; Hubbard v. Association, 98 Fed., 930; Hubbard v. Association, 98 Fed., 932; Travelers Insurance Co. v. Selden, 78 Fed., 285; Maryland Casualty Co. v. Glass, 29 Texas Civ. App., 159; Sherman v. Insurance Co., 67 Atl., 259.

Upon motion to that effect, made by defendant before trial of a case, the court should strike out, in one of plaintiff's depositions, the part of the answer of said witness thereto which is hearsay.   Globe Acc. Co. v. Gerisch, 45 N. E., 563; National Masonic Assn. v. Shyrock, 73 Fed., 777; Equitable Mut. Acc. Assn. v. McCluskey, 29 Pac., 383; Murphy v. Pension Fund Assn., 83 Pac., 577; Marler v. Railway Co., 27 So., 181; McBride v. Railway Co., 54 S. E., 675.

MR. JUSTICE BROWN delivered the opinion of the court.

The defendant in error, which is hereafter styled the association, is a corporation organized under the laws of the State of Missouri and doing business in Texas.   The object of forming the association was, among other things, "to provide a benefit fund for members of the association in case of accident or death."   The membership consisted of white males who possessed certain qualifications.   The funds by which the benefits were to be paid were collected in annual dues of $11, payable one-half in advance on January 1 of each year, and the other half on July 1.   Article 9, section 2, of the constitution provides as follows: "$5000 shall be paid to the beneficiaries named in the certificate of any deceased member in case of death by accident."   Jennie Roth, the plaintiff in error and beneficiary in the certificate, was the wife of W. H. Roth, who became a member of the association on the 16th day of January, 1895.   On the 1st day of January, 1905, Roth owed $5.50 dues to the association, which he failed to pay on that day.   At Henryetta, Indian Territory, on the 15th day of January, 1905, Roth mailed a check for the amount of his dues to the secretary of the association at Dallas, but it did not reach the secretary until the morning of the 16th.   After Roth had mailed his check and on that day he, with a friend, went to a pond near Henryetta, which was covered with ice, for the purpose of skating.   While they were skating Roth got a fall on the ice, and it is claimed by the plaintiff in error that he struck his head against the ice in the fall which caused his death as hereafter stated.   This is a sharply contested issue.   After the fall Roth got up from the ice and continued his skating for about half an hour, then, with his friend, walked to the town of Henryetta.   A short time after this occurred Roth became unwell and made various complaints.   He died on the 5th day of March, 1905.   For the purposes of this opinion we will assume that Roth died from the accident, as was found by the jury.   At the trial before a jury a verdict was given in favor of Mrs. Roth and a judgment was entered accordingly.   Upon appeal to the Court of Civil Appeals of the Sixth District that judgment was reversed and the cause remanded. The application for a writ of error was granted because the decision of the Court of Civil Appeals practically settles the case.

The Court of Civil Appeals correctly held that the mailing of the check by Roth to the secretary of the association was not a payment of the dues until the check was received by that officer.   Roth was not in good standing when he fell on the ice, but was by the payment reinstated on the 16th of January, the next day after he fell, and continued to be a member of the association in good standing until he died.

Section 2 of article 9 of the constitution of the association provides that $5000 shall be paid to the beneficiaries named in the certificate of any deceased member "in case of death by accident."   Assuming that Roth died from the effects of the fall on the ice, Mrs. Roth is entitled to recover in this case unless her claim is defeated by section 1 of article 6 of the constitution, which we here copy:

"The annual dues of this association shall be $11, which shall be apportioned as follows:   $1.50 to the Post, $1.50 to the State Division; and where there is no Post, $3 to the State Division; $6 to the benefit or indemnity fund; and $2 to the general expense fund. The above dues shall be due from, and paid by every member annually in advance, or in semi-annual installments, of $5.50 each in advance, on January 1 and July 1 without notice.   Any member may pay said dues before they become due as aforesaid, but any member failing to pay said dues in advance on the day on which they become due, as aforesaid, to the secretary of the State Division of which he is a member, shall by such failure cease to be a member of this association, and he and his beneficiary shall cease to be entitled to any benefits under his benefit certificate.   Should he, within thirty days after such default pay such dues, he may be reinstated, and receive a new card of membership, but he shall receive no insurance benefits of any kind under his benefit certificate that may have accrued between the date of said default and the date of his reinstatement; and, if injured during the thirty or less days of his delinquency, the delinquent member shall receive no indemnity therefor, nor shall his beneficiaries receive anything should he be killed during such period of delinquency; but after thirty days after such default, he can only again become a member of this Association by making formal application in the manner provided for new members."

This case turns upon the construction of the word, "killed," as used in the last quoted section.   In seeking the meaning of that word we must bear in mind that if it is susceptible of two constructions it must be given the interpretation most favorable to the beneficiary. Bacon on Benefit Societies, vol. 1, sec. 179; Goddard v. East Texas Fire Insurance Co., 67 Texas, 71.   We must also look to any other provision of the constitution which will aid in arriving at the meaning of the language under consideration.

The verb "kill" means "to destroy life, animal or vegetable" (Webster's Dictionary).   The word "killed," in the section of the constitution above quoted, applied to the facts of this case, refers to the state or condition of Roth, that is, death had resulted from the accident during his delinquency.   Under article 6 of the constitution Mrs. Roth can not recover if her husband died before he was reinstated.   Under the 9th article she can recover if her husband died

from the accident. Construing the two in harmony, she can recover if his death by accident occurred at any time while he was in good standing.

The distinction between the words "injured" and "killed" is very clearly made in the clause of the constitution quoted. If it was intended to bar the beneficiary in case death ensued from the injury received during the period of delinquency, it could have been done by saying, "the delinquent member nor his beneficiary shall receive any benefit," but the right of the beneficiary is clearly made dependent upon the result of the injury. The two words can not mean the same thing.

It is not claimed that Roth's death occurred before his reinstatement to membership in the order, but the defense is rested upon the proposition that the word "killed," as used in that connection, referred to the accident or the cause of the death; that is, when Roth fell upon the ice he was "killed" within the meaning of that word as used in article 6 of the constitution, although he lived six weeks thereafter. In support of the claim that this is the meaning of the word the Honorable Court of Civil Appeals cites the following two cases from the Supreme Court of Mississippi: Martin v. Copiah County, 15 So., 73; Newton County v. Doolittle, 18 So., 451. In each of the cases cited a wound had been inflicted upon a person in one county who died in a different county. The suit was to recover a reward which was allowed by statute for the arrest of "anyone who had killed another and is fleeing or attempting to flee before an arrest, to be paid by the county in which the homicide occurred." The question in each case was whether the county where the wound was inflicted was liable for the reward, or another county in which the death occurred, and in each case the Supreme Court of Mississippi held that the county in which the wound was inflicted was liable for the reward. In the first case cited above the court used this language: "The question now presented is, whether, for the reward, the person killing may be said to have killed another when the mortal blow is struck of which the person soon dies, although death does not occur until after the arrest of the fugitive who gave the mortal wound. The manifest purpose of the Act giving a reward is to incite to the arrest of fleeing homicides and secure them for trial; and an interpretation of the statute which requires that the victim of a mortal wound shall be actually dead before arrest, to entitle to the reward, is too literal and would exclude cases which fall clearly within the spirit and purpose of the law." The court, in seeking the intention of the Legislature, properly looked to the purpose for which the law was enacted and accordingly held that the man who inflicted a mortal wound from which death followed, within the meaning of the law, killed the deceased in that county, therefore, the county in which the wound was inflicted ought to pay the reward. There seems to be another sound reason for that construction, that is, that the county in which lawlessness occurred should be responsible for the expense of arrest and trial of the party who committed the crime. In those cases the word "killed" was interpreted to refer to the act which caused the death, the blow or shot constituted the criminal act, the

result fixed the degree of the crime and punishment; but in the 6th article of the constitution of the association the word "killed" definitely refers to the result of the accident, that is, if the member should die while a delinquent the beneficiary could not recover. We are of opinion that the Court of Civil Appeals erred in holding that the word "killed," as used in that article, referred to the accident from which the death ensued, and in holding that Mrs. Roth was not entitled to recover because the accident which caused the death happened while Roth was a delinquent.

The trial judge submitted this cause to the jury on the theory that the plaintiff was entitled to recover only in case she established the following facts: (1) That her husband was at the time of his death a member in good standing of the Travelers' Protective Association of America, and (2), that his death was caused by his falling accidentally upon ice and striking his head thereon, and that the accident alone caused his death. The defendant in error challenges the correctness of the charges given by the court, contending that the right of the plaintiff depended upon whether Roth was a member in good standing at the time the accident occurred. We do not find it necessary to discuss this question here, for the reason that it is fully disposed of in our opinion upon the main issue. There was no material error committed by the court against the defendant in the charges complained of.

The court was requested to instruct the jury to return a verdict for the defendant. The evidence was sufficient to raise the issues upon which plaintiff's right to recover depends, therefore, the charge was properly refused.

By the seventh assignment of error defendant in error complains of the refusal of the court to give the following charge requested by it: "Gentlemen of the jury: If you believe from the evidence that the blood clot in Roth's ventricle was caused wholly or in part by any bodily infirmity or disease, then the defendant is not liable, and you should return a verdict for defendant." The court distinctly charged the jury that the death of Roth must have been caused alone by the accident of falling and striking his head upon the ice, which was more favorable to defendant than the facts justified. In view of another trial we will say that this language: "That the Travelers' Protective Association of America shall not be liable . . . in case of injury, disability or death happening to the member while intoxicated or in consequence of his having been under the influence of any narcotic or intoxicant, or disability when caused, wholly or in part, by any bodily or mental infirmity or disease, duelling, fighting, wrestling, war or riot," does not apply to a case of death, but of disability only: there is no ambiguity in the terms used in the rule endorsed on the certificate.

The defendant in error has presented many objections to the evidence admitted by the court, of which we will discuss only such as will arise on another trial.

The plaintiff took the deposition of J. W. Sullens, who met White and Roth on the streets of Henryetta as the latter were returning from the pond where they had been skating. In answer to an inter-.

rogatory the witness detailed statements made by White and Roth with reference to the latter's fall on the ice, all of which we hold to be inadmissible, because it was hearsay, except that which states the action of Roth in placing his hand to his head, which might be admitted with the accompanying statement, "it hurt my head and made it ache," being limited to proof of the fact that his head ached at the time he was speaking, but not to be considered as evidence to establish the fact of the fall or of striking his head on the ice.

Mrs. H. C. Embree kept a boarding house and Roth boarded with her. Plaintiff took her deposition, to which there were many objections by defendant. The following question was propounded to her: "4-c-Q. State how his (Roth's) appearance was after the time that he is said to have fallen on the ice, whether he was right mentally and physically? Did he seem to be sick or stupid, or was there any difference in his appearance and in his conduct after the time he is said to have fallen on the ice and previous to that time?" to which the witness answered: "Mr. Roth was not right. He did not step any more like he had, his steps were slow, and he lost his cheerfulness. There was all the difference in the world in his manner after he had had the fall. He was stupid and was never well any more in my house." Objection was made to a part of the interrogatory because it was leading, that is, the following: "Did he seem to be sick or stupid?" We are of the opinion that the objection was well taken and that this portion of the interrogatory was leading and suggested the answer to the witness.

The following portions of the answer copied above should have been stricken out, first: "Mr. Roth was not right. He did not step any more like he had." This was the opinion of the witness; she did not state any symptom observed by her. Also the following: "There was all the difference in the world in his manner after he had had the fall," and, "he was stupid and never well any more in my house." The statement that he was stupid should have been stricken out because it was in answer to a leading question, and the remainder was matter of opinion. Question 5-b-Q propounded by the plaintiff to Mrs. Embree reads: "State how his appearance was during the entire time, from the time he was hurt until the time of his death, and how his conduct then compared with his condition before said fall? State if he made any complaints up until the time of his death, and if so, what such complaints were. State what his general appearance was," to which she answered: "Mr. Roth was on a gradual decline after he got the fall on the ice and I don't think he improved any after he fell on the ice up to the time of his death. Mr. Roth was not the hearty man and did not enjoy his meals as he had heretofore. He was not so talkative as he had been. Mr. Roth complained each day which he was with me and said that he was feeling badly and told me that his head hurt him. After he was taken to his bed I visited him several times and I noticed a marked difference in his appearance. The first I saw him after he had taken to his bed he was partially paralyzed. He seemed to be on a gradual decline after he got the fall." The defendant objected to and moved to

strike out the following portion of the answer: "Mr. Roth was on a gradual decline after he got the fall on the ice and I don't think he improved any after he fell on the ice up to the time of his death." The answer was the opinion of the witness, not facts; it should have been excluded. The following portion of the answer was admissible: "He was not so talkative as he had been. Mr. Roth complained each day while he was with me and said he was feeling badly and told me that his head hurt him."

The defendant propounded to the witness Mrs. Embree the following question: "Is it not a fact that, as far as you observed, Mr. Roth's mental condition after the date of his alleged fall, until about February 1, was the same as it had theretofore been? And is it not a fact that you never noticed any material change in his mental or physical condition until in February, after his return from a trip on the road, and a short time before he became partially paralyzed?" to which she answered: "Mr. Roth didn't talk as much as he had and did not seem as cheerful. There was a change in his physical condition from the time he was hurt. I think that he began to go down from the time he got the fall. I can't remember date, and I can't say about the trips he made." Objection was made to the following portion of the answer: "There was a change in his physical condition from the time he was hurt. I think that he began to go down from the time he got the fall." This was an opinion of the witness and should have been excluded. Plaintiff propounded the following question to the witness R. J. Dickson: "Please state what was the apparent condition of said Roth's health when you saw him at Weleetka, on January 24, 1905, if you have answered that you saw him on that date? Did he seem to be in good health or in ill health? Did you have any conversation with him at that time? If you did, did he make any complaint about his health or concerning his health?" to which the witness answered: "I could not discover from his appearance on this occasion that he was in ill health, but he complained of severe pains in his head; but on a subsequent visit to Weleetka, about ten days later, at my office, his face was somewhat drawn to one side, and he was unable to articulate or talk coherently. This attack lasted about half an hour, during which time I administered to his needs with a stimulant. He remained in my office about two hours on the morning of this occasion, from about 8 o'clock to about 10 o'clock, going from my office to the Weleetka Cotton Oil Company's office, where he solicited for the sale of some coal, and from there he returned to Henryetta on the noon train; this was on Friday." The defendant moved to exclude all that part of the answer following the words: "But on a subsequent visit to Weleetka;" because it was not responsive to the question. The motion should have been sustained. The question gave no notice to defendant of an intention to use as evidence what occurred at a time different to that named.

It is ordered that this cause be remanded to the District Court.

*Reversed and remanded.*