# REPUBLIC UNDERWRITERS v. HOWARD.
## No. 1203.

Court of Civil Appeals of Texas. Eastland
Feb. 16, 1934.

Rehearing Denied March 23, 1934.

Mays & Perkins, of Sweetwater, and Ellis K. Douthit, of Abilene, for appellant.

Beall, Beall & Beall, of Sweetwater, for appellee.

LESLIE, Justice.

This was a suit by Cecil C. Howard for compensation for damages by reason of an industrial accident sustained while employed by the L. S. Howard Gin, which carried compensation insurance with the Republic Underwriters, the appellant herein. The Industrial Accident Board awarded damages, and the Underwriters appealed therefrom by timely notice and filing of suit in the district court. Trial in court resulted in judgment for claimant, and the carrier prosecutes this appeal. Facts material to the points presented will be stated in the body of the opinion.

The board's award was made June 28, 1932. The claimant's notice of appeal was given the board and carrier July 11, 1932. His time for filing independent suit based on his notice expired July 31, 1932. The Underwriters' notice, etc., of appeal was given July 15, 1932, and seventeen days thereafter (August 1st) it filed its suit in the district court of Nolan county to set aside the award. The next day, August 2d, the claimant filed what is designated as his answer and cross-action to the Underwriters' suit. Citation issued on it August 9, 1932. September 30, 1932, the employee filed his first amended original answer and cross-action. Following this, the Underwriters filed, on February 9, 1933, a motion to discontinue or dismiss its original suit filed August 1, 1932. The court overruled this motion the same day and exception was taken thereto. On that day, February 9, 1933, the Underwriters had filed what is designated "Plaintiff's First Amended Original Petition," containing a general demurrer to the claimant's cross-action, and also a general denial of the same. This general demurrer, though present in the pleading, was never urged before the trial court until after he acted upon the motion to dismiss. General and special exceptions, however, were urged after the claimant filed his "Second Amended Original Answer and Cross-action," upon which the trial was in fact had. Said demurrer, as it related to the original or first amended answer and cross-action, was specifically called to the court's attention first in the motion for a new trial.

To the action of the trial court in overruling the motion to dismiss or nonsuit, the appellant contends that "the court in failing and refusing to sustain its motion to dismiss or discontinue its appeal from the award of the Industrial Accident Board was in error."

Obviously, this assignment is predicated upon the ground that the appellee's cross-action was subject to a general demurrer in that it did not allege the jurisdictional facts prerequisite to a valid appeal, or, in other words, that no valid cross-action or plea for affirmative relief had been filed by claimant at the time the motion for nonsuit or discontinuance was interposed. This proposition rests upon the further contention that the claimant's first amended answer and cross-action omitted any allegation (1) that within thirty days after the receipt of the injury he notified either his employer, or the association of the same; or (2) that he properly filed within six months after injury any claim with the Industrial Accident Board.

An examination of the record discloses that at the time the appellant was seeking to nonsuit or discontinue its suit, the only pleading then on file by the claimant—the first amended answer and cross-action—in fact did not contain any allegation as to said notice and claim before the board. In this situation the appellant invokes article 2182, R. S. 1925, and authorities thereunder. Hoodless v. Winter, 80 Tex. 638, 16 S. W. 427; Frois v. Mayfield, 31 Tex. 366; Egery v. Power, 5 Tex. 501; Apache Cotton Oil Co. v. Watkins (Tex. Civ. App.) 189 S. W. 1083; Peters v. Chandler (Tex. Civ.. App.) 51 S. W. 281; White v. Williams, 13 Tex. 258; Ramsey v. District Court, 33 Idaho, 296, 193 P. 733; Odum v. Peeler (Tex. Civ. App.) 278 S. W. 884; Dannelly v. Jeffrey (Tex. Civ. App.) 283 S. W. 351; W. B. Walker & Sons v. Hernandez, 42 Tex. Civ. App. 543, 92 S. W. 1067.

Based upon this statute and such authorities, the appellant concludes as follows:

"In our opinion the above authorities are conclusive of this appellant's right to take a non-suit, if, at the time of filing of its motion, there was no cross-action for affirmative relief or for that matter, even if there was a purported one but such being subject to a general demurrer, then nevertheless such motion for discontinuance should prevail."

The appellant then proceeds upon the authority of Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084, Globe Indemnity Co. v. McClurg (Tex. Civ. App.) 38 S.W.(2d) 125, Texas Employers' Ins. Ass'n v. Wright (Tex. Com. App.) 4 S.W.(2d) 31, and other authorities of like import discussing jurisdictional questions under the Workmen's Compensation Law to demonstrate that the claimant's answer and cross-action was subject to a general demurrer, and that its nonsuit should have been granted, carrying with it claimant's interest. if any, in the litigation.

It will be remembered that the claimant's

notice of dissatisfaction, etc., of the award and intention to appeal was mailed to the board July 8, 1932, and received by it July 11, 1932. From this it is seen that August 1st, the day suit was filed by the Underwriters, the claimant's twenty days for independent suit had expired. His cross-action was filed, however, August 2, 1932, twenty-one days after his notice, etc. If the claimant had given no notice of dissatisfaction and intention to appeal from the award at all, he certainly had the right under the statute to appear and present his claim for compensation for the injury under the terms of the statute. Having given notice, and failing to file suit, or present a cross-action within the twenty days, would certainly not put him in a worse position than if he had given no notice at all.

■ No doubt the cross-action was timely filed. In the recent case of Maryland Casualty Co. v. Reel et al. (Tex. Civ. App.) 64 S. W.(2d) 1047, 1048, the Industrial Accident Board made an award to Reel, the employee, against the company. Reel appealed to the district court, and likewise, and in due course, the insurance company also appealed by separate proceeding. The second case, that of the casualty company, was first taken up for trial, and Reel presented a plea in abatement to the suit upon the ground of the pendency of the former suit by him involving the identical cause of action. The trial court sustained the plea in abatement, and dismissed the second suit and refused the company's motion to consolidate the two causes. The appeal followed, and it was held that "the trial court did not err in that disposition of the suit. When Reel filed his appeal in the district court, *such action had the effect of bringing all the parties and the entire controversy before that court* for a trial de novo. If the insurer [Insurance Company] desired to contest the previous award to Reel, *it was its duty and privilege to do so in that proceeding, by way of cross-action.*" (Italics ours.) Citing many authorities. This holding, we think, is sound and supported by the authorities. The logic of it is that when one of the interested parties has perfected an appeal from the award of the board, and thereby carried all the issues and interested parties into the trial court, it is a useless and futile thing for another of the interested parties to proceed to file an independent suit or appeal. After the suit is filed by one of the parties, the litigation rests in the trial court for the benefit of all of the interested parties, and in a case like this the claimant has his right to a final hearing upon the merits of his

claim under the pleadings deemed sufficient as an original proposition, or made so by amendment under the rules of procedure in our courts. The claimant is vitally interested in the substance of the litigation the appealing party timely puts in the court.

■ Stated differently, if the litigation was carried to the trial court by the carrier's suit, the claimant's right under the appellant's pleadings remained intact (notwithstanding the nonsuit may have been granted) to be urged and claimed under proper pleadings at any time prior to a dismissal of a claimant's cause for want of prosecution. We find no statute or authority which in any wise limits or circumscribes such right to affirmative relief that inheres in the very nature of the action under the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.), which should always be liberally construed to effect its beneficent purpose.

Subdivision 8, art. 10, R. S. 1925, under the subject of the "Construction of Laws of Texas," reads:

"The rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes; but the said statutes shall constitute the law of this State respecting the subjects to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

■■ Further, we think that article 2182, R. S. 1925, properly construed affords no basis for the appellant's contention in so far as it is claimed that plaintiff's nonsuit would in any way affect the cross-action. That article reads as follows:

"At any time before the jury has retired, the plaintiff may take a non-suit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief."

This article places no limitation whatever on the plaintiff's right to take a nonsuit, provided he does so "before the jury has retired." The statute then declares the effect of a nonsuit by saying it "shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief." That is a succinct statement of the effect of the nonsuit.

In the instant case, the association, after having filed its suit to set aside the award, filed its motion to dismiss "*its suit,*" and included therein as well a tender of the amount of the board's award. The trial court, in

refusing to permit the association to nonsuit as to "its suit," committed technical error, but it was harmless. There was no error in the court's action in so far as he refused to permit that ruling to have any effect on the claimant's cross-action. Bailey v. Federal Supply Co. (Tex. Com. App.) 287 S. W. 1090. This pleading, by its title and contents, discloses that the claimant was seeking affirmative relief, usual in such cases. Let it be granted that the pleading by way of cross-action was deficient in the two respects contended, it was nevertheless amendable, and, indeed was fully amended later in matters of substance as evidenced by the second amended answer and cross-action, upon which the trial was had.

■ When the association perfected its appeal from the award of the Industrial Accident Board, that appeal carried all the issues and interested parties before the district court for a trial de novo of the controversy. Article 8307, § 5, R. S. 1925, as amended by Acts 1931, c. 224, § 1 (Vernon's Ann. Civ. St. art. 8307, § 5); Vestal v. Texas Employers' Ins. Ass'n (Tex. Com. App.) 285 S. W. 1041; Southern Casualty Co. v. Fulkerson (Tex. Com. App.) 45 S.W.(2d) 152; Ocean Accident & Guarantee Corp. v. McCall (Tex. Com. App.) 45 S.W.(2d) 178. No one contends that the Underwriters did not perfect the appeal. Hence, the jurisdiction of the district court was invoked to adjudicate the entire controversy, and the Industrial Accident Board lost jurisdiction of same. The situation in such a case becomes analogous in principle to that of the judgment in the justice's court where appeal has properly been taken to the county court. It is well settled that when an appeal is properly prosecuted from a judgment of the justice's court in a case that it has jurisdiction to try, the perfecting of an appeal therein avoids the judgment of the justice's court, and the trial in the county court is one de novo. A dismissal of the case in the county court does not revitalize the judgment of the justice's court. Campbell v. Knox (Tex. Civ. App.) 52 S.W.(2d) 803. Hence, to sustain appellant's contention, the result would be to destroy by appeal claimant's right under the award, and the nonsuit (if given the effect contended for by appellant) would prevent a hearing on his cross-action.

■ Further, as to the alleged deficiencies in the answer and cross-action pertaining to "jurisdictional allegations of the notice of injury and claim before the Industrial Accident Board," we believe the allegations of such cross-action derive support in the respects mentioned from the facts alleged in the Underwriters' (appellant's) petition wherein it alleges, with reference to the award of the board, "that said ruling and decision is numbered R-8964 and is styled Cecil C. Howard, employee, v. L. S. Howard, employer, Republic Underwriters, insurer, and a *certified copy of said final ruling and decision will be filed among the papers of this case for jurisdictional purposes.*" (Italics ours.) By referring to, the certified copy of the ruling, it is found to contain the following statement:

"On this the 28th day of June, 1932, after due notice to all parties, came on to be considered by the Industrial Accident Board *claim for compensation* by Cecil C. Howard against the Republic Underwriters, and the Board finds and orders: On January 9, 1932, L. S. Howard a subscriber to the Employers' Liability Law with insurance carried by Republic Underwriters had in his employ Cecil C. Howard whose average weekly wage was * * * and that said Cecil C. Howard suffered injury in course of his employment," etc. (Italics ours.)

In addition to the above there is another pleading upon the part of the association, all of which taken in connection with the claimant's first amended answer and cross-action, supplies, we think, by clear inference at least, all the alleged missing jurisdictional elements contended for by the appellant. The pleading we now refer to is the plaintiff's (appellant's) motion to discontinue its suit. It is there alleged:

"Comes Republic Underwriters, plaintiff in the above styled and numbered cause, and respectfully requests the court to enter an order discontinuing or dismissing its suit filed herein on the 2nd day of August, 1932, same being a suit instituted for the purpose of setting aside an award of the Industrial Accident Board granted to defendant herein on the 28th day of June, 1932, and in this connection would show:

"I. That it tendered the amount of said award to the defendant Cecil Howard which by said Howard was refused.

"II. That this plaintiff has at all times heretofore been ready, willing and able, and is still ready, willing and able to pay to said defendant the amount of said award, to-wit, $539.76, together with interest at the legal rate.

"III. That plaintiff stands ready to tender over into the registry of this court said award as stipulated.

"Wherefore, plaintiff prays that its said suit be discontinued."

This is a plain recognition by the appellant of the fact that the Industrial Accident Board had in due course considered and passed upon the appellee's claim for industrial injury. Its tender of the amount awarded, and its effort to have the claimant accept the same, would seem to go even further and recognize that the claim was not only properly presented and claimed, but that there was some merit in it as well as the award. In view of the contents of the award and the allegations of this motion taken in connection with those of the cross-action, it would be unreasonable to hold that said jurisdictional facts were not sufficiently presented to warrant a proper amendment at least of claimant's pleadings. Clearly, they give rise to the inference that notice of injury was given as a basis for the claim, and that in due course the board acquired jurisdiction of the claim, acted upon it, and made a valid award. Such conclusion, we think, is warranted by the following authorities: Davies v. Texas Employers', etc. (Tex. Com. App.) 16 S.W.(2d) 524; Indemnity Ins. Co. v. Sparra (Tex. Civ. App.) 57 S.W.(2d) 892; Texas Employers', etc., v. Lovett (Tex. Civ. App.) 19 S.W.(2d) 397; Texas Employers', etc., v. Arnold (Tex. Civ. App.) 57 S.W.(2d) 954; Globe Ind. Co. v. McClurg (Tex. Civ. App.) 38 S.W.(2d) 125; Texas Employers', etc., v. Schoeppel (Tex. Civ. App.) 10 S.W.(2d) 405; American Employers' Ins. Co. v. Scott (Tex. Civ. App.) 33 S.W.(2d) 845.

In 49 C. J. p. 864, § 1274, it is said: "A plea, answer, or other pleading of defendant may aid the petition, declaration, or complaint, and supply, cure or remedy an omission, defect or infirmity therein, as by affirmatively alleging or admitting a material fact not alleged, or defectively alleged, by plaintiff." The principle is applicable here as discussed by this court in the Sparra Case, supra, to which, and the authorities there cited, reference is here made.

The trial court committed no error in proceeding to try the case upon the merits of the cross-action.

■ The second, third, fourth, and fifth assignments of error are briefed together and will be so considered here. They in substance contend that the answers of physicians that dizziness, headache, loss of memory, etc., which the injured employee complained of could have resulted from a lick sustained by him on his head when hit by a heavy weight, etc. It is complained that these questions were improper and called for answers involving matters conjectural, speculative, and remote. The appellee was asserting permanent disability or incapacity to perform the usual duties of the workman, etc., as a result of the accident. There was much testimony of the injury and that he had suffered in the respects reflected by the questions. In this state of the record there was no error in permitting the physicians to testify that definite results, symptoms, or ailments were traceable to the injury, or caused thereby. The questions did not call for speculation or conjecture upon the part of the witnesses as to what might possibly grow out of the injury at some remote or indefinite time in the future. The testimony complained of is not of the character condemned in such authorities as Galveston, H. & S. A. Ry. Co. v. Powers, 101 Tex. 161, 105 S. W. 491; St. Louis Southwestern Ry. Co. v. Moore (Tex. Civ. App.) 161 S. W. 378; Houston & T. C. Ry. Co. v. Fox, 106 Tex. 317, 166 S. W. 693; Pecos & N. T. Ry. Co. v. Collins (Tex. Civ. App.) 173 S. W. 250. If it had gone to the extent of showing with reasonable probability that the injury would produce a given effect, it would not have been objectionable under the above authorities. Certainly a witness should not be permitted to testify to the results of speculative and conjectural nature that may occur in the remote future. However, in the instant case the appellee had offered pertinent testimony that his condition was the result of the injury received, or followed close thereafter, and there was no error in the admission of testimony simply to the effect that the condition could be the result of the injury. These assignments are overruled.

Assignments six, seven, eight, nine, and ten are briefed together and will be so considered. They involve the admission of alleged erroneous testimony, some of it charged to be hearsay and some of it self-serving. The brief of appellant quotes extensively and consecutively from the Q. and A. record of the evidence as taken, and then presents ordinary bills of exception, embracing parts of the same testimony and omitting some of the same as found in the statement in the brief. Some portions of the testimony were admissible without doubt, and parts of the same witness' testimony were questioned, but since the judge's approval of the bills certifies that "in each instance counsel pointed out the specific portion of the answer to which he was lodging his objections," we have concluded to pass over the sufficiency of appellee's objections to a consideration of the bills and consider the merits of the objections raised.

At the risk, perhaps, of extending the opinion to an undue length, we deem it necessary to set forth in substance the nature of the testimony challenged, and give it its true setting in relation to the testimony generally. Respective witnesses testified as follows:

The appellee's brother, Leland, or L. S. Howard, for whom the employee was working when injured, and for whom he attempted to work soon thereafter, testified that he "observed" the appellee before and after the accident; that he was in good condition in matters of health and body before that event and not so thereafter; that he was nervous; that he was put back to the same kind of work when he returned after the injury that he did prior thereto and he could not do it; that he observed a paralytic condition about the face of the appellee after the injury; that his condition was getting worse about September 10, 1932; that his memory was bad during this period of time; that he complained of having headaches. This witness was in close touch with the injured employee during his illness and he went with him on his trips to undergo examinations by physicians and to obtain treatments.

W. B. Howard, the father of the injured party, and with whom he was living at the time of the accident and thereafter, testified to the appellee's condition of health and body before the accident and after the same, noting the specific change and difference. He testified that appellee could not do the work he did before; that after the injury he was nervous, had bad spells with his head, and would send for the doctor; that from his observation of him after the injury he suffered pain, had twitching of the mouth that bothered him a great deal, and "a paining of the head"; that he complained of his head and would have to send for the doctor; that he complained of pain in his head; that during such spells he complained of his eyesight; that he would pick up a paper and say that he could not read it; that witness noticed defect in one eye; that he could hardly see with it; that after the hurt, the appellee had paralytic trouble, his mouth drew up, and he was affected with facial paralysis; that as to his resting or suffering at night, he would get up and sit up, stating he felt better sitting up.

Dr. G. W. Young, a physician of long and successful experience, who was called to attend the appellee in his injured condition, qualified and testified that during the injury and the condition following the same, the appellee complained to him of not being able to sleep; that he was given to sweating, etc.; that shortly after the accident he complained of not being able to see out of his right eye. Such was the general nature of the physician's testimony wherein he detailed the manner in which the injured party described his ailment or affection at times he attended upon him.

Barney Haynie, a druggist and witness for the appellee, testified to a long acquaintance of the physical condition, health, etc., of the appellee, both before and after the injury; that certain noticeable changes in him followed the injury; that one side of his face was higher than the other and that for a while there was a twitching about it; that he was nervous; that he complained of not being able to sleep; that at the time of such complaint he noticed something unusual about him in that he seemed to be "pale" and "didn't have enough circulation," etc.; that he, witness, sold him "rest medicine for pains, something on the order of sedatives."

Mrs. Cecil C. Howard, wife of the claimant who attended him in his injuries, testified, in substance, as did the foregoing witnesses. First, to his condition prior to the accident and thereafter. That he became nervous, had a "dropping" of the face, had a paralytic affection on one side of his face; that he was not able to do heavy work since the accident; that he complained of not being able to see so well since the injury; that he would come home with a headache; that when he tried to work, he would come home and suffer; that he had to take medicine at those times; that he appeared to be in pain; that he brooded over the condition he was in.

With the exception of the testimony of the witness W. D. Handy, which is treated separately, the above is set out as a reflection in substance of the state of the testimony as it relates to appellant's assignments of error predicated on the admission of hearsay testimony and self-serving declarations in matters of complaining and other alleged objectionable statements on the part of the appellee during his injury. The chief vice is asserted to be the hearsay nature of the complaints.

We now return to a specific discussion of the testimony of the witness W. D. Handy. This is made necessary by the peculiar nature of the question raised and the confused state of the record relating thereto. While on the witness stand, Handy testified at length concerning the health, physical and mental condition of the appellee before and after the accident. After the injury, he stat-

ed that he noticed certain things "wrong" with the appellee, relating incidents leading to the statement. On cross-examination, attorney for appellant asked this witness if he had told the brother of appellee such things, and further asked the witness what the brother said. The witness answered that he had so informed the brother and that he, the brother, said he had noticed no change. Immediately thereafter on redirect examination, the witness was asked by appellee's attorney if after the above conversation he did not again call the brother's attention to such things. To this the witness answered yes, and was asked what the brother said on this occasion. To this the witness answered that the brother said that there was something "wrong" with him.

If there is any error in the foregoing, it is difficult, if not impossible, to appraise it in view of the confused state of this record in that matter. When the witness Handy first called the attention of the brother of appellee to the latter's condition, he (Handy) said he was speaking at the time to *Will Howard*. The statement of facts shows that only two Howards, besides the appellee and his wife, Lillian, testified on the trial of this case; one of them was W. B. Howard, the seventy-eight year old father of the appellee, and the other L. S. Howard, or Leland Howard, the brother of appellee and employer of him at the time of the injury. If Handy's statements were made to Will Howard, who clearly did not testify at all in this trial, a different question is presented to that had Handy made the statement to L. S. or Leland Howard, the only brother that testified in the case. This record does not show that Will Howard and L. S. Howard are one and the same persons, and indicates quite clearly that they are different persons. Therefore, we are not warranted in proceeding upon the theory that the testimony of Handy, brought out on his cross-examination, was by way of impeachment of L. S. Howard and that the testimony on redirect examination was by way of rehabilitating the testimony of L. S. Howard.

So, we have here a bit of hearsay testimony in the record relating to a person who did not testify and whose testimony, therefore, could not be impeached. This element, foreign to the merits of the case, was first brought into it by the appellant's attorney. The sum and substance of it is that one who did not testify said there was something "wrong" with the appellee. If error at all, we think it should be held harmless in view of the testimony, generally. If another stat-

ed that there was something "wrong" with the appellee after the accident, he said no more that was conclusively shown by the testimony generally and particularly that given by the appellant through the witness A. B. Shumaker who organized the Underwriters company, was its attorney in fact for the general transaction of its business, and participated in the handling of injuries. When the injury of appellee was reported to that company, this witness went to Roscoe, Tex., the place of injury, looked into the situation, authorized the appellee to incur certain doctors' bills for medical attention, and on cross-examination at the trial, testified concerning his company's relation to the injured employee by reason of the accident as follows:

"Q. You admit that you owe Cecil Howard something? A. Yes, sir.

"Q. It is just a question of how much you owe him? A. Yes, sir.

"Q. You deny owing him anything? A. No, sir. I never have denied I owed him something.

"Q. You have changed your mind since this case came up? A. No, sir, I never denied I owed him."

Therefore, the condition of the appellee after the accident and during his recovery or that there was something "wrong" with him during such time, was so definitely fixed in the case by legitimate testimony and positive admission of appellant, that it would be unreasonable to view the point otherwise than as a harmless error, if error at all. For the reasons stated, we have thus segregated this bit of testimony and dealt with it independently.

■ We, therefore, return to a consideration of the alleged objectionable testimony given by different witnesses and first set out above. We have carefully considered this testimony in the light of the statement of facts generally in order that its true nature and effect might be better appreciated. After so doing, we have concluded that this testimony was admissible as against the objections urged. Much of it was admissible as statement of facts within the knowledge of the witnesses, and the other portions of the same were admissible as res gestæ, either of the injury or the suffering and conditions resulting therefrom at the time of such complaints. As authority for this conclusion, we cite Roth v. Travelers' Protective Ass'n of America, 102 Tex. 241, 115 S. W. 31, 32, 132 Am. St. Rep. 871, 20 Ann. Cas. 97, an

opinion by our Supreme Court through Judge Brown. That was a case in which recovery was sought on a policy by reason of accidental death. The holder of the policy fell on ice and some time thereafter fell ill and died as a result thereof. In the statement of the case, Judge Brown says: "A short time after this occurred Roth became unwell, and made various complaints." The opinion first disposed of contentions not relevant here, then considered the assignments predicated upon the admission of testimony of complaints, etc. Some portion of the testimony was condemned as being the opinion of witnesses and the Supreme Court then segregated a portion of the testimony from the mass of testimony offered and specifically approved it, setting it out thus:

"The following portion of the answer was admissible: 'He was not so talkative as he had been. Mr. Roth complained each day while he was with me, and said he was feeling badly, and told me that his head hurt him.' "

This testimony, upon which that court put its stamp of approval, was given by the boarding house lady with whom the deceased Roth was staying while in his injured and suffering condition. This authority, standing alone, perhaps, warrants the admission of the testimony complained of, but the Supreme Court has further spoken upon the admissibility of such testimony in the case of St. Louis S. W. Ry. Co. of Texas v. Brown, 30 Tex. Civ. App. 57, 69 S. W. 1010, 1011, in which a writ of error was refused. The holding there approved is found in the following excerpt from that opinion:

"By the tenth assignment appellant predicates error on the refusal of the trial court to strike out the portion of the testimony of the witness W. A. Abney to the effect that appellee told him he (appellee) could not work any more. The proof seems undisputed that, after an effort to drive the wagon for a few days after the accident, he ceased to try to work, and has done no work since. His master induced him to drive for two or three days; but he quit work, assigning as a reason that he could not. The objection urged against it was that it was hearsay and self-serving. The declaration was made a little while after the accident; and another witness testified he limped, and appeared to be crippled. The declaration was made before the suit was brought, and in direct connection with his ceasing his usual work. It was a reason given at the time for quitting. An-

other witness stated that he saw him try to work, and he could tell from his motions and efforts that he was unable to do his accustomed tasks. The declaration amounted to no more than a statement of the present effect of his infirmities at that time. In this view it was in the nature of res gestæ, and we think the court committed no error in admitting it. This same witness testified, over objection, in this connection, that appellee limped, appeared to be crippled, and was unable to work, and said he based his statement on the fact that he walked crippled, worked slowly, walked with a stick, etc. These were facts which he might or might not know, and which any witness, expert or otherwise, might detail to the jury. Pringle v. Railroad Co., 64 Iowa, 613, 21 N. W. 108."

If these authorities are correct statements of the law, and such holdings do not appear to have been modified, they cover each phase of the testimony here challenged by the appellants and conclusively determine its admissibility. For other authorities see 17 Tex. Jur., p. 648, § 272 et seq.

■ The spontaneous representations and complaints of a sick person of the nature, symptoms, and effect of a malady or injury under which he is suffering at the time are competent testimony. Texas & P. Ry. Co. v. Barron, 78 Tex. 421, 14 S. W. 698; Roth v. Travelers' Protective Ass'n of America, supra. For the foregoing reasons, these assignments are overruled.

■ The eleventh assignment of error complains of a portion of the argument of appellee's attorney wherein he stated: "Those men setting there, they think that every man who makes a claim, that same is an unjust and fraudulent claim." It was objected to as being without the record, inflammatory, and prejudicial. The bill merely presents this fragmentary part of the argument, and standing alone, it is not made to appear that the same was inflammatory and prejudicial. Further, the representative, who was also a chief official in the company, testified in substance that the appellant had had 3,107 claims for compensation and had also had 3,107 cases. Therefore, the remark of the attorney would seem to have some basis in the testimony and permissible as legitimate inference or deduction therefrom. The quoted portion of the argument certainly does not fall within the rule requiring reversal of the judgment of a trial court on account of inflammatory and prejudicial argument as that rule was applied in Nicholson v. Nichol-

son (Tex. Civ. App.) 22 S.W.(2d) 514; Panhandle & S. F. Ry. Co. v. Sedberry (Tex. Civ. App.) 46 S.W.(2d) 719; Coleman v. Miller (Tex. Civ. App.) 19 S.W.(2d) 829; Id. (Tex. Com. App.) 29 S.W.(2d) 991. The assignment is overruled. Davis v. Hill (Tex. Com. App.) 298 S. W. 526 sustains our ruling.

Assignment twelve predicates error on the ruling of the trial court in excluding from the jury testimony by a witness that he had seen the claimant "take a drink of whiskey." The bill recites that earlier in the trial a physician who was a witness for the claimant had testified that "poisons like alcohol would impair the eye sight." The claimant was seeking compensation for impairment of eyesight along with other injuries resulting from the accident. The appellant had filed a general denial and when the witness Hudson was on the stand, he was asked the question whether or not he had ever noticed the appellee Howard take a drink of whisky. The answer was in the affirmative and the court excluded the same. In presenting the matter in its bill of exception, it is stated that the appellant "expected to show by said witness and would have shown if permitted by the court that Cecil C. Howard frequently used alcohol." This bill is qualified by the court wherein he states that "the court did not refuse counsel permission to introduce testimony concerning claimant having drunk alcohol." Further, the qualification states that no predicate had been laid for the introduction of the testimony, and by that we understand the court to mean that in offering the testimony, it should have disclosed that the use of the liquor was at such time and under such circumstances as to probably have a bearing on the alleged impairment of appellee's eyesight. In this connection the witness testified that he had no occasion to observe Cecil Howard since January 9, 1932, the date of the accident. Where an assignment is urged to the exclusion of certain testimony, the burden is on the one seeking to introduce the testimony to show that it was admissible. Texas Emp. Ins. Ass'n v. Davidson (Tex. Civ. App.) 288 S. W. 471, 475. In the above state of this record, we do not believe that the bill shows error. The effect of the acceptance of a qualified bill is stated in 3 Tex. Jur., p. 657, § 464. It is there said that the qualification is controlling as to the facts therein stated; that it must be accepted as true; and that the qualification may not be contradicted nor the facts therein stated varied. The assignment is overruled.

For the reasons assigned, the judgment of the trial court is affirmed.