The ST. PAUL INSURANCE COMPANY, Appellant,

v.

Mary Elizabeth CASTILLO, Appellee.

No. 5012.

Court of Civil Appeals of Texas, Eastland.

April 7, 1977.

Rehearing Denied May 12, 1977.

Thomas P. Sartwelle and John P. Venzke, Fulbright & Jaworski, Houston, for appellant.

William W. McNeal, McNeal, Thrash, Williams & Dozier, Luling, for appellee.

WALTER, Justice.

This is a workmen's compensation heart attack case. Mary Elizabeth Castillo, surviving widow of Louis Castillo, recovered a judgment for death benefits against The St. Paul Insurance Company and St. Paul has appealed.

The jury found that Louis Castillo had a heart attack on or about October 31, 1973 in the course of his employment by Texas Inbred Mice Company which was a producing cause of his death.

█ The testimony of Ronnie King constitutes some evidence of probative value on the issues of strain or overexertion which occurred in the course and scope of Castillo's employment. King's testimony established strain or overexertion in carrying the trash cans.

He was asked the following questions and he gave the following answers:

"Q As I understand it, the back trash cans, I assume, were for trash from inside to outside where they would be picked up?

A That and wet bedding.

Q Could you describe or explain what wet bedding was?

A Wet bedding is sawdust that they use for the mice bedding so when they change about every day or two it gets wet because the mice urinate on it and they throw it out because they can't re-use it or anything and so when we put it in trash cans it gets real full and

heavy and it takes two men to carry it anyway.

Q But as I understand, and what I am getting at here, you mentioned that he went around to the back trash cans and those were full and he had to carry these trash bags or cans to the front trash cans?

A Yes, sir.

Q Was that the usual thing or unusual?

A Very unusual.

Q In what way was it very unusual?

A Because the trash people didn't come to pick up the back trash cans that day.

Q All right. Had you observed, prior to this date, Mr. Castillo taking out trash as part of his normal duties?

A Yes, sir.

Q And as I understand your testimony it was unusual for him to have to go this 200 yards distance to the front trash cans?

A Right."

This unusual task of hauling the trash cans 200 yards requiring strenuous exertion and strain was observed by King about 7:35 in the morning. At about 8:30 that morning, King talked to Castillo near the front trash can. King again observed Castillo in the boiler room with Mr. Cagnola and Mr. Breeding about 9:30. Castillo left the plaint soon thereafter but died of myocardial infarction about 10:15 a. m.

King was asked to relate what Castillo told him about his physical condition when he saw him in the front shop by the trash can. St. Paul made this objection:

"MR. SARTWELL: Excuse me, Mr. King. Your Honor, we again object to any testimony with respect to what Mr. Castillo might have said because it's obviously being offered as a res gestae statement which is admissible as part of the res gestae only if it's made in connection with an act that is already proven. That is in this case an injury occurring at a certain time and place as a result of a certain cause and there is no independent proof of any injury in this particular case

and therefore it would not be admissible at this time."

The objection was overruled and King answered:

"A Just told me that he had passed out by the trash can. That he had carried out a heavy load and nobody had found him there. He thought he laid there about 10 or 15 minutes but nobody had found him or woke him up or even went by so he had to come in and sit down for awhile because he was till pale and sweating.

Q All right. Did he say which trash can or did he have to explain it to you?

A He was dumping it into the big trash can but he was carrying one of these big garbage cans and he said it was heavy.

Q What I am getting at, the trash can he was dumping it into, did you already know which trash can that was?

A Yes, sir, the front one.

Q And at that time was the one that was 200 yards away?

A Yes, sir.

Q Now, did he tell you anything else about his condition in regard to how he felt or anything like that?

A Just that he wasn't feeling too good. He had pains in his chest and his arms were sore and—

Q All right. Let me slow you up a little bit now. He wasn't feeling too good and he said he had pains in his chest?

A Yes, sir.

Q Was he any more specific than that?

A His back was hurting.

Q Let me ask you first about the pains in his chest, and I'm not trying to be too obscure or tricky with you but do you recall exactly what he said or the substance of it?

A All I remember is he said his chest was hurting.

Q All right. Then he said something about his back?

A Yes, sir.

Q Do you recall the substance of what he said about his back?

A Just that the trash can he lifted up in the trash can was heavy."

In *Truck Insurance Exchange v. Michling*, 364 S.W.2d 172 (Tex.1963), the court said:

"For declarations to be admissible in evidence as part of the res gestae they must be made in connection with an act proven. In other words there must be evidence of an act itself admissible in the case independently of the declaration that accompanies it. *Kalschinski v. Illinois Bankers Life Assur. Co.*, 311 Ill.App. 181, 35 N.E.2d 705; *Staley v. Royal Pines Park*, 202 N.C. 155, 162 S.E. 202."

These res gestae statements made by Castillo were made in connection with an act proven, i.e., hauling the trash cans 200 yards. Another reason this testimony is admissible is because they are declarations as to bodily condition. 1 McCormick & Ray, Texas Evidence § 831 (2d ed. 1956).

In *Republic Underwriters v. Howard*, 69 S.W.2d 584 (Tex.Civ.App.—Eastland 1934, writ dism'd), the court said:

"The spontaneous representations and complaints of a sick person of the nature, symptoms, and effect of a malady or injury under which he is suffering at the time are competent testimony. *Texas & P. Ry. Co. v. Barron*, 78 Tex. 421, 14 S.W. 698; *Roth v. Travelers' Protective Ass'n of America*, [102 Tex. 241, 115 S.W. 31,] supra . . ."

Appellee's hypothetical question to Dr. Nevin required the doctor to assume as true that on the morning of October 31, 1973 while at work, Castillo (1) carried two trash cans at separate times an estimated distance of 200 yards; (2) strained himself working with a wrench in the hot boiler room; and (3) overexerted himself carrying and loading 50 pound sacks of feed into a vehicle. Based on the assumption of the truth of these three activities, the doctor's opinion was that this physical exertion could have a causal relationship upon Castillo's having a myocardial infarction.

Outside the declarations of the deceased to King and Benson, there is no indepen-

dent proof that Castillo was working with a wrench in the hot boiler room or that he was loading 50 pound sacks of feed. Therefore, there is no admissible evidence that Castillo performed these two physical activities.

In *O'Dell v. Home Indemnity Company,* 449 S.W.2d 485 (Tex.Civ.App.—Amarillo 1969, writ ref. n.r.e.), the court said:

"The burden of proving strain or overexertion is not a difficult one. Evidence of some type of strain or overexertion which occurred in the course and scope of employment and testimony by a doctor that the heart attack was probably the result of the strain or overexertion are usually sufficient . . ."

We hold the evidence of strain or overexertion in carrying the trash cans in the course and scope of Castillo's employment constitutes evidence of probative value on these issues. However, the hypothetical question propounded to the Doctor was improper in that it assumed the truth of two physical activities that were not supported by evidence. St. Paul timely objected and we are compelled to hold Dr. Nevin's opinion testimony was based on facts not properly introduced into evidence.

The judgment is reversed and the cause is remanded.

McCLOUD, C. J., not participating.